James Earl HINES, Petitioner-Appellant,

v.

J. J. ENOMOTO, Director, California Department of Corrections, Respondent-Appellee.

No. 80–4311.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1981.

Decided Oct. 5, 1981.

Rehearing and Rehearing En Banc Denied Nov. 30, 1981.

Baron L. Miller, San Francisco, Cal., for petitioner-appellant.

Ronald E. Niver, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before ANDERSON and NORRIS, Circuit Judges, and TAKASUGI,* District Judge.

## J. BLAINE ANDERSON, Circuit Judge:

James Earl Hines, currently incarcerated in a California state prison, appeals the judgment and order of the district court dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm in part and reverse and remand in part for an evidentiary hearing.

### I. BACKGROUND

Hines was convicted in 1976 in a California state court on charges of kidnapping for the purpose of robbery, assault with a deadly weapon, and attempted robbery. The convictions arose out of a robbery allegedly attempted by Hines and an unidentified confederate during which a delivery truck was hijacked and its driver forced at gunpoint to accompany Hines for several blocks. On direct appeal, the California Court of Appeal reversed the attempted robbery conviction, but affirmed the other convictions. Hines subsequently filed a number of unsuccessful state habeas petitions, the most recent of which was denied by the California Supreme Court on February 25, 1981.

Hines filed his § 2254 petition with the district court on March 28, 1978. He alleged five grounds for relief: (1) a lack of subject matter jurisdiction; (2) a denial of his right to exercise peremptory challenges during voir dire; (3) the refusal to give several requested jury instructions; (4) the suppression of material evidence and subornation of perjury by the prosecution; and (5) ineffective assistance of counsel. Included in certain of the five broader claims were more specific claims of error. In its Order to Show Cause, the district court found that Hines had properly exhausted his state remedies as to each claim, summarily dismissed claims of "secreting" a witness at the preliminary hearing, denial of jury instructions, and suppression of evidence, and noted that the remaining claims were not so obviously lacking in merit as to be dismissable at that stage of the proceedings. After some procedural maneuvering by the parties, the district court denied the writ.

The court rejected the contention that the writ should issue on the basis of the alleged denial of the right to exercise peremptory challenges because Hines' counsel had failed to object to the state trial court's cutoff of peremptories. The court dismissed the claims of perjured testimony and impermissibly suggestive identification procedures because it deemed Hines to have waived each by failing to object at trial. Finally, the district court dismissed the various claims of incompetent representation as being either unfounded or insufficient to justify relief.

Hines filed a motion to reconsider in which he alleged three additional grounds for relief: (1) The denial of access to certain records on his state court appeal; (2) The state appellate court's failure to apply the reasonable doubt standard in judging the sufficiency of the evidence; and (3) The state appellate court's denial of his right to self-representation by appointing counsel over his objection. The district court rejected each of the additional grounds, and reiterated its rejections of the claims originally presented. At no time did the district court hold an evidentiary hearing on any of Hines' claims. This court granted Hines' application for a certificate of probable cause, and he now appeals in propria persona. Facts pertinent to each of the individual claims will be developed in the course of this opinion.

### II. ISSUES ON APPEAL

Hines has raised the following issues in his brief:

(1) Denial of his right to exercise all of the peremptory challenges to which he was entitled under California law;

---

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

(2) Ineffective assistance of counsel;

(3) Subornation of perjury;

(4) The sufficiency of the evidence to prove intent to rob;

(5) The refusal to provide him with a free preliminary hearing transcript on his state appeal;

(6) Violation of his right to self-representation on appeal; and

(7) The dismissal of his federal habeas petition without an evidentiary hearing.

## III. *DISCUSSION*

### A. *Peremptory Challenges*

Under California law in effect at the time of Hines' trial, by jury, a defendant in a criminal case was normally entitled to make 13 peremptory challenges during the *voir dire* examination of potential jurors. A defendant charged with an offense punishable by life imprisonment, however, was entitled to make 26 peremptory challenges under California Penal Code § 1070(a). Hines' counsel at his state trial exercised only 13 peremptory challenges during *voir dire* under circumstances which at least suggest either that the attorney was unaware of his right to exercise twice as many peremptories in cases involving potential life sentences, that he was satisfied with the panel as constituted, or that the rule had simply slipped his mind temporarily. According to a transcript of the *voir dire* session, the following took place toward the end of the selection process:

THE CLERK: People's Ninth Challenge.

MR. ROWLAND: People pass, your Honor.

THE CLERK: *Defendant's Thirteenth and last Challenge.*

MR. KEANE: Your Honor, we would thank and excuse Mrs. Chin.

THE COURT: Thank you, Mrs. Chin. Would you go to Room 307, please?

THE CLERK: Mr. James Dwyer—D-w-y-e-r. Mr. James Dwyer.

THE COURT: Good afternoon, Mr. Dwyer. Does anything come to your mind since you have been sitting here listening to this proceeding?

MR. DWYER: No. My name is James Dwyer, Noe Street, San Francisco; journeyman machinist; single.

THE COURT: Thank you very much.

THE CLERK: People's Tenth Challenge.

MR. ROWLAND: People pass, your Honor.

THE COURT: Swear the jury.

(emphasis added) (C.R. 11, Appendix A)

It is clear from the transcript that the court clerk mistakenly announced that Hines' thirteenth challenge was the last one available to him. It is also clear that Hines' counsel did not bring the error to the attention of the court, and that he did not thereafter attempt to exercise any further peremptories. Hines argues that the state court's erroneous limitation on the number of challenges available to him deprived him of his right to an impartial jury.

The district court denied Hines' peremptory challenge claim both on the ground that it failed to state a claim for federal habeas relief, and because Hines' state trial counsel had failed to object at the time of the alleged error. We consider each of these issues in turn.

Nowhere does the U. S. Constitution explicitly guarantee a criminal defendant the right to exercise peremptory challenges. The importance of the peremptory challenge as a device for assuring a fair and impartial jury has been emphasized repeatedly. As the Supreme Court noted several decades ago:

"The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused. 'The end of challenge,' says Coke, 'is to have an indifferent trial, and which is required by law; and to bar the party indicted of his lawful challenge is to bar him of a principal matter concerning his trial.' ... He may, if he chooses, peremptorily challenge 'on his own dislike, without showing cause; he may exercise that right without reason or

for no reason arbitrarily and capriciously.... Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned." *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). More recently, the Court has recognized the "long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). *See also Rosales-Lopez v. United States,* —— U.S. ——, ——, n.6, 101 S.Ct. 1629, 1634, n.6, 68 L.Ed.2d 22 (1981).

■ Our circuit has condemned curtailment of the right to exercise peremptory challenges in the context of direct appeals from federal criminal convictions. In *United States v. Allsup,* 566 F.2d 68 (9th Cir. 1977), we held that it was error for a trial court to improperly refuse to dismiss two jurors for cause because the defendant was thereby forced to exercise two of his allotted peremptory challenges. In *United States v. Turner,* 558 F.2d 535 (9th Cir. 1977), we also found error where the district court failed to explain clearly the procedure for exercising peremptories, and the defendant unwittingly "waived" his right to some of his challenges. While each of these decisions is perhaps distinguishable on its facts, they clearly apply the principle that a criminal defendant may not be denied the full number of peremptory challenges available, and that any curtailment on the exercise of challenges is reversible error.

We have located only one case dealing with an alleged denial of the full number of challenges afforded by state law in the context of a federal habeas petition. In *Workman v. Cardwell,* 338 F.Supp. 893 (N.D. Ohio), *affirmed,* 471 F.2d 909 (6th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2748, 37 L.Ed.2d 161 *and* 412 U.S. 932, 93 S.Ct. 2762, 37 L.Ed.2d 161 (1973), relief was denied where the petitioner claimed that he was forced to exercise a peremptory after the state trial court improperly denied a challenge for cause. The *Workman* court reasoned that because limitations on the exercise of peremptory challenges are "a matter of state law," 338 F.Supp. at 896, no federal habeas relief could issue.

■ To the extent that *Workman* suggests that denial of the right to exercise a full allotment of challenges can never be cognizable as a ground for federal habeas relief, we respectfully disagree. Under § 2254(a), habeas relief is available whenever a petitioner can demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." In other contexts, we have noted that a claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process. *See, e. g., Quigg v. Crist,* 616 F.2d 1107 (9th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980). As *Pointer, Swain, Allsup,* and *Turner* demonstrate, the peremptory challenge represents an important, perhaps even vital safeguard of the right to an impartial trial, a right guaranteed by the sixth amendment, and one which lies at the heart of the right to due process. Because an outright denial of half the number of allotted peremptories may vitally affect the integrity of the jury selection process and, by implication, the fairness of the trial itself, we hold that Hines has stated a claim for federal habeas relief.

We do not hold that the Constitution requires the states to afford criminal defendants a particular number of peremptory challenges, nor that it requires them to adopt any particular procedure to implement the exercise of peremptory challenges. Our decision rests on the inescapable conclusion that a defendant who has been denied half of the peremptories given by statute may have been denied the right to assure the empaneling of an impartial jury.[1]

1. Judge Norris is correct. We do not cite *Stilson v. United States,* 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919). We read *Stilson* to hold only that the United States Constitution does not require the *granting* of peremptory challenges and that, if granted, they must be exer-

■ Even though Hines properly stated a claim for relief, the failure of his trial counsel to raise the issue before the state court may bar him from now raising the issue in a federal habeas proceeding. Under *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), the failure of a habeas petitioner to observe a state's "contemporaneous objection" rule results in a procedural default which precludes litigation of the alleged error in federal court unless the petitioner can demonstrate "cause" for his failure to raise the question at trial, and "prejudice" accruing from the error. Hines does not dispute that California's contemporaneous objection rule requires that objections to the conduct of peremptory challenges be made at the trial level in order to preserve the issue for appeal. *See Jackson v. Superior Court In and For San Diego County*, 10 Cal.2d 350, 74 P.2d 243 (1957). Consequently, we must determine whether his failure to object may be excused under the "cause and prejudice" standard of *Sykes*.

■ When the contemporaneous objection rule is involved, the focus is upon the reason why the attorney did not object. *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir., 1981). As we observed in *Garrison*, an attorney ordinarily will fail to make an objection for one of two reasons: either a strategic decision is made not to object, or the attorney will fail to object because of inadvertence or ignorance of the law. A failure to object for strategic reasons does not satisfy the "cause" prong of *Sykes* unless the attorney's conduct in deciding to withhold the objection violates the sixth amendment. *Id.*

*Garrison* further indicated that where the failure to object is because of inadvertence or ignorance, the "cause" prong of *Sykes* may be satisfied even though the attorney's handling of the matter does not fall below the minimum necessary to satisfy the sixth

amendment guarantee of right to counsel. *Id.* at 377-78. Because the *Garrison* panel found that the attorney's failure to object there was a reasonable tactical decision, it did not elaborate on what degree of inadvertence or ignorance might suffice to demonstrate "cause" under *Sykes*. We similarly are in no position to elaborate because we cannot determine on this record whether the failure of Hines' state trial counsel to object to the cutoff of peremptories was deliberate or inadvertent. Accordingly, we do not address the question whether the dicta in *Garrison* on "inadvertence or ignorance" is applicable here.

In the present case, the state trial court transcript is, as we have noted, ambiguous. While it unequivocally indicates that Hines' counsel failed to exercise another challenge after the clerk announced that the thirteenth would be his last, it quite obviously is silent on the question whether counsel failed to object out of ignorance or oversight, or whether he simply was satisfied with the panel as constituted and was not concerned with the court clerk's erroneous cutoff at 13 challenges. Three documents in the record, however, shed further light on the problem. Exhibit "C" attached to the State's Return to Order to Show Cause consists of a letter from Hines' state trial counsel to the California Attorney General's Office. The last paragraph of that letter states that:

> "My notes of the voir dire indicated that I was not denied any preemptory [sic] challenges. The notes indicate that I accepted the jury after using a number of preemptory [sic] challenges."

The second document is an affidavit of the same trial counsel submitted by Hines in which counsel acknowledges that the state trial transcript showed that the clerk announced the thirteenth challenge as his "last." The final two paragraphs of the affidavit state the following:

> California on the exercise of that right. Insofar as we can ascertain, there were no limitations at the time of Hines' jury trial. Hines had the "right" to exercise all 26 peremptories. *Stilson* simply does not address the proposition we are forced to face in this case. (Emphasis added)

cised "with the *limitations* placed upon the manner of its exercise." *Id.* 587, 40 S.Ct. 30. We do not quarrel with those basic propositions. However, this is not that case. Here, California has granted the "important" right. We do not deal with "*limitations*" placed by

"I am aware, and I know in terms of my knowledge at the time of the Voir Dire I was aware that one is entitled to twenty six challenges in a case relating to the possibility of life imprisonment without the possibility of parole.

"I presently have no independent recollection as to whether or not there were individuals remaining on the jury panel whom I would have excluded through challenges over and above the thirteen which I exercised."

The third document is an affidavit which Hines presented in support of his motion to reconsider in which he alleges that the attorney informed him before the trial that only defendants charged with offenses punishable by the death penalty were entitled to 26 peremptory challenges.

■ The documentary evidence in the record is thus inconclusive. Accordingly, we will remand to the district court for an evidentiary hearing on the issue of state trial counsel's reason for failing to object at voir dire. While counsel's second affidavit indicates that he was aware of his client's right to 26 peremptory challenges, it does not satisfactorily explain why he did not make an objection. In the affidavit, he frankly admits that his voir dire notes do not reflect the clerk's error. Given the suggestive flavor of the state trial transcript, we believe that the record reveals conflicting interpretations of the evidence which should be resolved only after a hearing, in accordance with our decision in *Pierce v. Cardwell*, 572 F.2d 1339 (9th Cir. 1978).

■ There remains a second prong of the *Sykes* analysis, however, which we must consider. If Hines was not "prejudiced" by his attorney's mistake, then we may not consider the claim here. Previous decisions indicate that on direct appeal we overturn a conviction where the defendant's right to peremptory challenge has been abridged without requiring that the defendant demonstrate prejudice. *See Swain v. Alabama, supra; United States v. Allsup, supra; United States v. Turner, supra.* Because the right to peremptory challenge may be exercised by the defendant for whatever reason may seem fit at the time with no need for justification, *see Swain v. Alabama*, 380 U.S. at 219, 220, 221, 85 S.Ct. at 835, 836, a requirement on a direct appeal that the defendant show prejudice would render enforcement of the right practically impossible. Under *Sykes*, however, we are not at liberty to dispense with the "prejudice" prong of the contemporaneous objection rule. Hines accordingly must demonstrate that his state trial counsel would have challenged another juror or jurors had he been aware of the remaining challenges. While Hines' trial counsel has already indicated that he has no present recollection whether he would have dismissed any more jurors had he objected to the cutoff, we see no reason at this stage to preclude either party from presenting such further evidence as may become available.

We emphasize the narrowness of our holding. We do not hold that a simple failure on the part of an attorney to exercise all available peremptory challenges necessarily justifies the granting of federal habeas relief. We merely remand for further consideration of the question whether, under the unique circumstances of this case, the failure of Hines' trial counsel to object to the cutoff of peremptory challenges satisfies the "cause" and "prejudice" requirements of *Wainwright v. Sykes*.

### B. Ineffective Assistance of Counsel

■ Hines argues that a number of alleged errors by his state trial counsel individually or cumulatively amounted to a violation of his right to effective assistance of counsel guaranteed by the sixth amendment. In *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), we stated the minimum level of competence required of an attorney by the Constitution thusly:

"Defense counsel's errors or omissions must reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney— they must be errors a reasonably compe-

tent attorney acting as a diligent conscientious advocate would not have made, . . ."

586 F.2d at 1330. In addition to showing that trial counsel failed to live up to this minimum standard, a petitioner must also demonstrate prejudice in order to obtain relief on the basis of ineffective assistance. See *Id.* at 1331; *see also, e. g., United States v. Winston,* 613 F.2d 221, 223 (9th Cir. 1980). We consider each of Hines' specific claims of counsel error in turn.

### (1) *Failure to Exercise Peremptory Challenges*

Hines has also raised the failure to object to the state court's curtailment of peremptory challenges as a separate ground under ineffective assistance of counsel. In view of our holding in the preceding section, we find it unnecessary to reach this issue. If the district court finds on remand that the alleged omission satisfies the *Wainwright v. Sykes* "cause and prejudice" standard, then the writ will issue and no further proceedings will be required. If the district court reaches the opposite conclusion that counsel's conduct does not rise to the level of "cause and prejudice," then the alleged error will certainly not amount to an unconstitutional deprivation of effective assistance of counsel.

We reiterate that we do not hold that a simple failure by a petitioner's trial attorney to exercise all available peremptory challenges is a ground for federal habeas relief.

### (2) *Failure to Object to Suggestive Identification*

Hines argues that his attorney's failure to object to an allegedly unconstitutional lineup held just prior to his preliminary hearing, and the attorney's failure "to investigate and challenge" the fairness of a photographic identification each constituted ineffective assistance.

 The allegedly suggestive photographic identification was made by the victim of the crime, Donald McTonnell, approximately one week after the robbery and

kidnapping. Hines' trial counsel did object to the lineup as being impermissibly suggestive, and the state court conducted a suppression hearing prior to trial out of the presence of the jury. In the course of that hearing, McTonnell testified that he could identify Hines as the perpetrator of the crime based upon his independent recollection of the event, and not based upon his recollection of the photographic identification. The state court denied Hines' motion to suppress the identification at the close of the hearing, impliedly finding that the procedure was not impermissibly suggestive. As the Supreme Court recently reminded us, such a determination comes to us with a "presumption of correctness" embodied in 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). We have examined the record, and find nothing therein to overcome that presumption. Hines received a full and fair hearing on his claim of suggestiveness. Consequently, we cannot now find that any action by his trial attorney was prejudicial.

 We similarly reject for lack of prejudice Hines' claim relating to his attorney's failure to object to a lineup identification made by the victim shortly before Hines' preliminary hearing. McTonnell testified in great detail at the trial on the circumstances of his observations of Hines during the robbery, and remained unshaken in his unequivocal identification of Hines, despite a vigorous and probing cross-examination which was directed toward McTonnell's opportunity to view Hines while the crime was in progress. Evidence of the lineup identification was merely cumulative to an overwhelmingly positive identification by McTonnell. Hence, there was no prejudice to Hines due to any alleged failure to object to the lineup procedure.

### (3) *Failure to Call Witnesses*

Hines claims that his state trial counsel's failure to call or interview two potential witnesses amounted to ineffective assistance of counsel. Specifically, he argues that the failure to call Officer Costello, the officer who conducted the McTonnell identi-

fication, and the failure to interview and call Walter Mitchell, the alleged owner of the car in which Hines was arrested, amounted to ineffective assistance.

Because we have found that there is nothing in the record to overcome the presumption that the hearing on McTonnell's photographic identification reached the correct result, we find that any failure to call Officer Costello could not have prejudiced Hines.

As to the failure to interview Walter Mitchell, we acknowledge that failure to interview potential witnesses can constitute ineffective assistance of counsel. *See, e. g., Cody v. Morris,* 623 F.2d 101, 103 (9th Cir. 1980). The record, however, does not reflect negligence on the part of Hines' counsel in investigating the case. A schedule and breakdown of the time spent by the attorney in trial preparation reflects several hours spent interviewing potential witnesses. As far as the failure to interview Mitchell is concerned, a letter from the attorney which is included in the record indicates that he relied upon Hines' assurance that Hines would arrange for Mitchell to contact him. The attorney arranged for Hines to make a number of outside calls while Hines was incarcerated, for the purpose of locating Mitchell. Mitchell apparently never contacted the attorney. Hines' assertion of a different version of the facts is not properly in the record. We find that any alleged failure to contact witnesses did not fall below the constitutional standard.

### (4) *Other Assertions of Incompetence*

We have examined both of Hines' remaining assertions of ineffective assistance and find that neither has any merit. The oral motion for new trial was sufficient, and the failure to object to the amendment of the complaint was not prejudicial.

### C. *Perjured Testimony*

According to Hines, the prosecution knowingly suborned perjury when it allowed the victim McTonnell to testify at trial that he made his photographic identification on July 1, 1976, one week after the

incident, while at the preliminary hearing he had testified that he had made the identification "within a couple days after the incident." The district court rejected the claim for a variety of reasons. We reject it here as patently frivolous. We have examined the record and it does not so much as hint that McTonnell perjured himself.

### D. *Sufficiency of the Evidence*

Hines challenges the sufficiency of the evidence to convict him of kidnapping with intent to rob, while essentially conceding the sufficiency of the evidence to convict him of simple kidnapping.

Insufficiency of evidence has been clearly established as a ground for federal habeas relief. The writ issues upon a showing that no rational trier of fact could, on the record evidence as a whole interpreted in the light most favorable to the prosecution, have found proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The district court examined the state trial transcript and concluded that a rational trier of fact could have found Hines guilty of each crime with which he was charged. We concur. The victim was driving a delivery truck which he estimated to contain some $15,000 worth of merchandise. The truck was hijacked in broad daylight in downtown San Francisco at a location where it would be inconvenient, to say the least, to unload an appreciable amount of the truck's contents. The truck was then transported several blocks where McTonnell made his escape after an accomplice joined the crime. A rational trier of fact could have inferred that Hines and his accomplice intended to rob McTonnell. We find no error here.

### E. *Denial of Transcripts*

In his motion to reconsider below, Hines raised for the first time the alleged denial of a transcript of his preliminary hearing by the California Court of Appeal on his direct appeal from the state trial court. He raises for the first time on this

appeal the alleged denial of a transcript of the prosecutor's closing argument. Because it was not presented below, we summarily deny the latter argument.

■■■■ As to the claim of denial of a preliminary hearing transcript, we initially confess some confusion on the exact nature of Hines' argument. There are several affirmative indications in the record that a transcript of the preliminary hearing was prepared. A letter from the clerk of the California Court of Appeal dated September 27, 1977, approximately two months prior to the date of that court's decision, indicates that a copy of the preliminary hearing transcript had been lodged and that a photographic copy was being transmitted to him. Even if we were to assume that the state appellate court had denied Hines a preliminary hearing transcript outright, however, we would find that Hines has not stated a ground for federal habeas relief. There is no federal Constitutional right to a preliminary hearing. *See Ramirez v. State of Arizona*, 437 F.2d 119 (9th Cir. 1971). It is clear from the papers presented below that Hines wished to use the transcript to argue a point of state law only, and not to vindicate any federally protected right. Consequently, Hines has not stated, under the circumstances of this case, a ground for federal habeas relief.

### F. Right to Self-Representation

■■■■ Lastly, Hines argues that he was denied his right to self-representation when appointed counsel was "forced" upon him during his direct appeal in California state court. Hines, however, was permitted to file a supplemental brief on his own behalf with the California Court of Appeal by an order dated April 12, 1977. Thus, even if we assume that the right of self-representation extends in all cases to the appellate process, his right was not here violated. We have sanctioned involuntary "hybrid representation" in the trial context. *See United States v. Kelley*, 539 F.2d 1199 (9th Cir.), *cert. denied*, 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976).

### IV. CONCLUSION

The judgment and order of the district court are AFFIRMED in part, and REVERSED and REMANDED in part.

NORRIS, Circuit Judge, dissenting:

The majority holds that the state, by inadvertently providing only 13 of the 26 peremptory challenges to which a defendant in a capital case is entitled by state statute, violates the Due Process Clause of the United States Constitution. Whatever the merit of this conclusion, it has been foreclosed, I think, by the Supreme Court. Accordingly, I respectfully dissent.

I emphasize that I do not denigrate the importance of peremptory challenges. The use of peremptory challenges—challenges which may be exercised "without a reason stated, without inquiry and without being subject to the court's control," *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965)—has a long history, dating back to English common law. *See Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). The practice "tends to persuade litigants of the fairness of juries and thus has an important role to play in the preservation of the jury system." Comment, *The Right of Peremptory Challenge*, 24 *U.Chi.L.Rev.* 751, 762 (1957). It is one thing to say that peremptory challenges are important. That much is clear, as evidenced by the fact that every state grants peremptories by statute and the federal government grants them in Fed.R.Crim.P. 24. It is quite a different thing, however, to say that the right to peremptory challenges is constitutionally guaranteed. The majority, I think, loses sight of that distinction.

We may not grant habeas relief merely because we disapprove of a procedure used by a state court in trying an accused. "State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the federal Constitution." *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963).

Unless the state action complained of rises to the level of a constitutional violation, it is simply irrelevant that the action is "undesirable, erroneous or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

The majority acknowledges that the only reported case dealing with the precise issue before us holds that a denial of the full number of peremptory challenges provided by state law does not afford a basis for federal habeas relief. *See Workman v. Cardwell*, 338 F.Supp. 893 (N.D.Ohio), *affirmed*, 471 F.2d 909 (6th Cir. 1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2748 and 2762, 37 L.Ed.2d 161 (1973). The majority is led by five other cases, however, to the "inescapable conclusion that a defendant who has been denied half of the peremptories given by statute has been denied the right to assure the empaneling of an impartial jury." With all due respect, I view that conclusion as being something less than inescapable.

The majority places great weight on certain language in the Supreme Court's decision in *Pointer v. United States, supra*. The right to peremptory challenges, Justice Harlan stated, "is one of the most important of the rights secured to the accused." 151 U.S. at 408, 14 S.Ct. at 414. Nothing in *Pointer*, however, suggests that the Court deemed peremptory challenges to be constitutionally required.[1] In any case, 25 years after *Pointer*, in *Stilson v. United States*, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919), the Court flatly rejected the suggestion that peremptory challenges are constitutionally secured. In *Stilson*, the defendants contended that by deeming multiple defendants to be a single party for the

purpose of allotting peremptory challenges, the federal statute which granted peremptories violated their Sixth Amendment right to be tried by an impartial jury. The effect of the multiple defendant rule was to give Stilson only half of the peremptories to which a federal defendant would ordinarily be entitled. The Court held that this dilution of the benefit of peremptory challenges did not implicate the constitutional right to an impartial jury: "[t]here is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases." 250 U.S. at 586, 40 S.Ct. at 30.

The majority unexplainably fails even to mention *Stilson* in its opinion. Even more puzzling is the majority's citation of *Swain v. Alabama, supra*, and *Rosales-Lopez v. United States*, —— U.S. ——, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) in support of its conclusion. In *Swain*, the Court, citing *Pointer* as authority, observed the "long and widely held belief that the peremptory challenge is a necessary part of trial by jury." 380 U.S. at 219, 85 S.Ct. at 835. In the next sentence of the *Swain* opinion, however, the Court, quoting *Stilson*, repeated that nothing in the Constitution requires Congress or the States to grant peremptory challenges. In *Rosales-Lopez*, the clear message of *Stilson* and *Swain* was repeated still again: "there is no Constitutional requirement that peremptory challenges be permitted." —— U.S. at —— n.6, 101 S.Ct. at 1634 n.6.

Nor do the two decisions by the Ninth Circuit which are cited by the majority lend any support to its conclusion. Neither *United States v. Allsup*, 566 F.2d 68 (9th Cir. 1977), nor *United States v. Turner*, 558 F.2d 535 (9th Cir. 1977), is relevant to the

---

1. In *Pointer*, the defendant objected to the mode of exercising peremptory challenges which the federal trial court imposed. The court required both the defense and prosecution to submit a list of challenges, without knowing how the other had exercised its challenges. The defendant contended that his rights were violated by this procedure because he might use a challenge to strike someone who the government also had challenged. Nothing in the opinion, however, indicates that the defendant or the Supreme Court viewed this as a constitutional question. Rather, the defendant objected to the method of selection on the ground that he "could not know the particular jurors before whom he would be tried until after his [peremptory] challenges, *as granted by statutes* of the United States, had been exhausted." 151 U.S. at 408, 14 S.Ct. at 414 (emphasis added).

issue before us. Both appeals involved the right to peremptory challenges secured by Fed.R.Crim.P. 24; neither raised constitutional questions. Indeed, in *Turner*, Judge Hufstedler, although acknowledging the importance of peremptory challenges, cited *Stilson* for the proposition that "[n]either the number of peremptories nor the manner of their exercise is constitutionally secured." *Id.* at 538.

The majority states that it does not "hold that the Constitution requires the states to afford criminal defendants a particular number of peremptory challenges . . . ." It would agree, presumably, that a state could provide 10 peremptory challenges by statute without violating the defendant's "right to assure the empaneling of an impartial jury." I admit to being puzzled, therefore, as to how that right is denied here, where Hines received 13 peremptory challenges. Obviously Hines had more assurance that an impartial jury would be empaneled than would a defendant in a state which provides 10 peremptory challenges. Defendants in non-capital criminal prosecutions in California are entitled by statute to 13 peremptory challenges, the same number that Hines received. I presume that the majority would not suggest that California defendants in non-capital cases are thereby denied the constitutional right to be tried by an impartial jury.

Nor, finally, do I think that habeas relief can be justified on a theory that peremptory challenges, although not constitutionally required, cannot constitutionally be denied at trial once they are granted by state statute. There is no suggestion here that the trial judge's denial of the additional peremptories was other than inadvertent, and there was no objection made by defendant's trial counsel. The majority, by finding a due process violation in these circumstances, sets the stage for the wholesale constitutionalization of the myriad state rules of criminal procedure. For under the majority's approach, the denial of any state procedural right which—although not constitutionally required—can be deemed important might be held to violate the Due Process Clause. That course, I fear, is like-

ly to impair rather than strengthen the federal courts' role in protecting the constitutional right of state defendants to a fair trial.