**Eddie GALINDO, Petitioner–Appellant,**

v.

**Eddie YLST, Warden; Attorney General of the State of California, Respondents–Appellees.**

**No. 90–56131.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1992.

Decided Aug. 5, 1992.

Gail Ivens, Los Angeles, Cal., for petitioner-appellant.

Carol Pollack and Donald F. Roeschke, Deputy Attys. Gen., Los Angeles, Cal., for respondents-appellees.

Before: REINHARDT and FERNANDEZ, Circuit Judges; and CROCKER, District Judge.*

PER CURIAM:

## INTRODUCTION

Eddie Galindo appeals the district court's denial of his petition for writ of habeas corpus. Galindo seeks relief from his California state court conviction for second degree murder. Galindo contends that he was deprived of a fair trial because of the state court's exclusion of exculpatory hearsay evidence which he contends was admissible as a dying declaration of the victim. He also contends his fundamental right to testify in his own behalf was denied when the trial court determined that he could be impeached with a prior manslaughter conviction. After that ruling, he did not testify. We affirm.

## BACKGROUND FACTS

Galindo was found guilty of second degree murder in connection with the death of his wife. Galindo and his wife were arguing. Galindo went to a bedroom closet, removed a sawed-off shotgun, loaded it, and then poked it into his wife's stomach.[1] The gun fired; Galindo claims he did not pull the trigger and that the gun went off accidentally. He later admitted to police that he knew the gun malfunctioned. His claim throughout his state appeals and this proceeding is that he did not know the gun could malfunction in the way that it did when his wife was shot.

Galindo claims two errors. The first is that the state court excluded the statements of his wife to a police officer after the shooting. When asked who shot her, Mrs. Galindo replied, "My husband." The officer then asked, "Was it an accident?" Mrs. Galindo answered, "Yes." She did not answer any further questions. She died several hours later. The trial court found that Mrs. Galindo's statements were not made under a sense of immediately impending death, and thus did not fall under the "dying declaration" exception to the hearsay rule. It excluded the statement.

The second claim of error surrounds the trial court's ruling that if Galindo chose to testify, he could be impeached by a fifteen year old prior felony conviction for manslaughter. The state court of appeals reversed and remanded, instructing the trial court to hold a hearing under *People v. Collins*, 42 Cal.3d 378, 228 Cal.Rptr. 899, 722 P.2d 173 (1986).

The trial court held a *Collins* hearing in camera to determine what Galindo would have testified about. The court ruled that though the manslaughter conviction was admissible, it would have exercised its discretion to exclude the prior felony conviction for impeachment purposes. After reviewing the trial evidence and Galindo's in camera testimony, the trial court concluded that there was no reasonable probability of a different result if the jury had heard Galindo's testimony. The state court of appeal affirmed.

After exhausting his state court remedies, Galindo brought a petition for writ of

---

* Honorable M.D. Crocker, Senior United States District Judge for the Eastern District of California, sitting by designation.

1. Galindo maintains that he was only trying to scare his wife, and that he never had any intention of killing her.

habeas corpus in the district court. The district court denied the petition. Galindo filed a timely appeal.[2]

## DISCUSSION

### A. *The "dying declaration"*

■ The state may not exclude evidence when to do so would deprive the defendant of his Sixth and Fourteenth Amendment rights. *Perry v. Rushen,* 713 F.2d 1447, 1450 (9th Cir.1983), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). Applying the balancing test set out in *Tinsley v. Borg,* 895 F.2d 520, 530 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991), we conclude that the exclusion of Mrs. Galindo's statement does not reach constitutional proportions.

The state's compelling interest in the application of the hearsay rule can be outweighed only by the most urgent considerations. *Perry,* 713 F.2d at 1453. The trial court found that Mrs. Galindo was not under an immediate sense of impending death. The state court's resolution of this factual question is presumptively correct under 28 U.S.C. § 2254(d), *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982), and the petitioner points to nothing in the record that requires disregard of the state court's finding. Nor has the petitioner demonstrated that Mrs. Galindo's statement was otherwise reliable. *Tinsley,* 895 F.2d at 530. Therefore the petitioner has not shown that his interest in the admission of Mrs. Galindo's statement outweighs the state's interest in its exclusion under the hearsay rule.

### B. *The erroneous impeachment ruling*

■ The government contends that Galindo cannot raise the claim that the trial court erroneously ruled that he could be impeached with his prior felony. The

government is correct. In *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984), the Supreme Court held that in order to preserve an objection to a trial court's ruling that a prior felony conviction could be admitted, a defendant must actually testify at trial. Galindo did not do so, and thus waived any federal constitutional claim he might otherwise have had.

We, of course, understand that *Luce* was laid down as a federal rule of procedure, but it surely follows that its requirements do not violate the United States Constitution. As the Court indicated, "a federal court's preliminary ruling on a question not reaching constitutional dimensions—such as a decision under Rule 609(a)—is [not] reviewable on appeal." 469 U.S. at 42–43, 105 S.Ct. at 464. Thus, at the time of Galindo's conviction, the California courts simply gave additional procedural protections to defendants. Those courts have explained the limits of the added protections, limits which cannot themselves violate the United States Constitution. The Constitution *was* complied with here.[3]

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

There is no doubt that Eddie Galindo committed *a* crime. He loaded a shotgun and poked it into his wife's stomach. The shotgun discharged, and Mrs. Galindo died as a result. Had Galindo been convicted of involuntary manslaughter, the constitutional errors that occurred during his trial likely would be harmless because the undisputed evidence that he committed *that* offense is overwhelming. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

However, Galindo was not convicted of involuntary manslaughter. He was convicted of *murder,* a far more serious offense. The evidence to support *that*

---

2. Galindo received an extension of time to file his notice of appeal until September 1, 1990, and thus his appeal is not untimely as contended by Ylst.

3. Essentially, Judge Reinhardt believes that the California courts erred, but we do not sit to

correct state court errors regarding state law. We sit to assure compliance with the United States Constitution. *See Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 481–82, 116 L.Ed.2d 385 (1992); *Guzman v. Morris,* 644 F.2d 1295, 1297–98 (9th Cir.1981).

charge is exceptionally slim. It is undisputed that Galindo did not intend to kill his wife: the prosecution itself introduced evidence that he did not even place his finger on the gun's trigger. The state claimed only that because Galindo knew, before he poked the gun into his wife's stomach, that it had "misfired" in the past, his action demonstrated "wanton disregard for human life" sufficient upon which to base a conviction for murder. With regard to that contention, the jury heard a police officer testify that, shortly after Galindo shot his wife, he admitted that he knew that the gun had "misfired" on occasion. What the jury did *not* hear is what Galindo meant by that statement: that he knew that the gun sometimes did *not* fire when the trigger was pulled, but that he had *never* known the gun to fire when the trigger was *not* pulled. That explanation undoubtedly could have had a *major* impact on the jury's decisionmaking; indeed, had the jury accepted that explanation, the evidence against Galindo would have been insufficient as a matter of law to support a murder conviction. *See infra* at 1434 n. 5.

The jury did not hear Galindo's explanation because the trial judge informed him that if he testified, the state could put into evidence the fact that he had been convicted of manslaughter as a result of a barroom brawl that had occurred almost fifteen years prior to the death of his wife. As is well-known to prosecutors and others, the introduction of such evidence is frequently devastating to a defendant's case. Galindo, being aware of that fact, gave up his right to testify. Unfortunately, the trial judge was wrong: on that fact, the California courts, my colleagues, and I unanimously agree. The error drastically prejudiced Galindo's defense: it wrongfully induced him to waive his constitutional right to present the only innocent explanation of the otherwise critical inculpatory fact—the fact on which the prosecution based its case. In short, the error wrongfully caused Galindo to surrender his federal constitutional right to testify in his own defense. A conviction that results from such an erroneous ruling cannot stand.

## I.

My colleagues uphold Galindo's murder conviction on the sole authority of *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). *Luce* is inapplicable both directly and as a basis for finding the error non-constitutional.

First, *Luce* established a federal *evidentiary* rule applicable only to *federal* criminal defendants, while Galindo was convicted in state court in a trial governed by state evidentiary rules. *See id.* at 41, 105 S.Ct. at 463. As the California Supreme Court expressly noted, *"Luce* is a rule of federal criminal procedure that the Supreme Court adopted pursuant to its advisory power, and hence is not binding on the states." *People v. Collins*, 42 Cal.3d 378, 385, 228 Cal.Rptr. 899, 903, 722 P.2d 173, 177 (1986).[1] The rule established in *Luce* therefore is not applicable here.

Second, a *Luce*-type rule does not apply to Galindo's case because his trial occurred before the creation of such a rule in California. It is true that *Luce* indicates that a state may adopt a rule similar to the one established in the federal courts by *Luce*. *Luce* was decided on December 10, 1984, and the California Supreme Court adopted a similar *Luce*-type rule on August 11, 1986. However, when it did so, in *People v. Collins*, 42 Cal.3d 378, 228 Cal.Rptr. 899, 722 P.2d 173 (1986), it explicitly did so only *prospectively*. *See id.*, 42 Cal.3d at 388, 228 Cal.Rptr. at 905–06, 722 P.2d at 179–180. Galindo's trial was held in early-December of 1984, a year-and-a-half before *Collins*. Thus, as the California court of appeals held on Galindo's direct appeal, California's *Luce-type rule does not* apply retroactively to Galindo's case.

Because at the time of his trial Galindo "was not required to testify in order to preserve for appeal a claim of improper

---

1. Indeed, *Luce* itself explicitly distinguished otherwise controlling cases on the basis of the difference between state and federal defendants. *See Luce*, 469 U.S. at 42–43, 105 S.Ct. at 463–64

(distinguishing *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), and *New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979)).

impeachment by prior conviction," it would be "intolerable" and "fundamental[ly] [un]fair" to apply a *Luce*-type rule to his appeal. *Id.*[2] More important, we are *bound* by the state court's determination that state law permits Galindo to appeal the impeachment issue. *See Zal v. Steppe,* 968 F.2d 924, 927 (9th Cir.1992) (holding that although *Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), upheld a rule that barred collateral challenges of contempt citations, appellant nevertheless could challenge his contempt citation on habeas because California elected not to adopt a collateral bar rule). *Luce* (or a *Luce*-type rule) therefore does not *procedurally* bar Galindo from raising the issue of the violation of his constitutional right to testify in his own defense.

## II.

As to the merits, I would hold that Galindo's federal constitutional rights were violated when he surrendered his right to testify in his own defense on the basis of an unlawful threat to inform the jury of a prior manslaughter conviction if he testified. The right to testify in one's own defense is fundamental. *See Rock v. Arkansas,* 483 U.S. 44, 49–53, 107 S.Ct. 2704, 2707–10, 97 L.Ed.2d 37 (1987) (noting its substantial historical foundation and its basis in several clauses of the Fifth, Sixth, and Fourteenth Amendments). A surrender of so basic a right must be knowing, voluntary, and intelligent. *See White v. White,* 925 F.2d 287, 292 (9th Cir.1990); *Cuffle v. Goldsmith,* 906 F.2d 385, 391 (9th Cir.1990); *see also United States v. Johnson,* 820 F.2d 1065, 1075 (9th Cir.1987) (noting that a defendant's waiver of his right to testify must be "knowing and voluntary" to be valid). A waiver cannot meet that standard if it is based on misinformation of a crucial nature provided by the

court or it is wrenched from a reluctant defendant by threatening him with drastic consequences that the state may not lawfully impose. *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970) (noting that the defendant must be made aware "of the relevant circumstances and likely consequences" of a waiver in order to qualify as an intelligent—and hence valid—waiver of his constitutional rights); *see also Cuffle,* 906 F.2d at 392 ("A state denies a defendant due process of law by inducing him to waive constitutional rights by threats of consequences that the state cannot legally bring about.").[3] A misinformed consent is not an informed consent: the same is true of a waiver. *Cf. United States v. Ocheltree,* 622 F.2d 992, 994 (9th Cir.1980) (holding waiver to search invalid when individual was implicitly threatened with illegal detention if he did not consent). The question whether a waiver of a federal constitutional right is valid is a question of federal, not state, law. Here, the federal standard was not met: because Galindo's "waiver" of his right to testify was not knowing, intelligent, and voluntary, it was constitutionally invalid under federal law.

The fact that the state *could* have adopted a *Luce*-type rule and warned a defendant of its consequences without violating his constitutional rights does not mean, as the majority appears to believe, that the state's violation was one of state law only. There are a number of actions a state may take without violating a defendant's federal constitutional rights if a state statute or rule provides for them that would nevertheless violate those rights if taken in the absence of such state law. For example, a defendant convicted of larceny may be constitutionally incarcerated for 20 years if the applicable state statute provides for such a term. However, it is a

---

2. We have expressed a similar view. *See United States v. Givens,* 767 F.2d 574, 578 (9th Cir.), *cert. denied,* 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985) (holding that it would be "grossly unfair" and would "wreak a substantial inequity" to apply *Luce* retroactively).

3. The state does not challenge Galindo's claim that his surrender of his constitutional right to testify in his own defense resulted directly from the state's threat to introduce into evidence the record of his prior manslaughter conviction. Nor does—or could—the state challenge the state court's finding that the state was not free to lawfully impose that consequence.

violation of both state law *and* the federal Constitution for a state to incarcerate a defendant for larceny for a 20–year period if the applicable state statute provides for only a 10–year term. My colleagues err by concluding that merely because California *could* have constitutionally burdened Galindo's right to testify in his own defense by enacting certain rules, his constitutional rights were not violated when the state burdened that right in the absence of such rules. *See, e.g., Hines v. Enomoto,* 658 F.2d 667, 672 (9th Cir.1981) (holding that a defendant who was denied the right to exercise half of the twenty-six preemptory challenges he was allowed under *state* law had a federal constitutional claim cognizable on habeas despite the fact that the Constitution does not require that a defendant be given twenty-six challenges). Because Galindo was induced to waive his federal constitutional right to testify in his own defense by the trial court's unlawful threat to permit the prosecutor to introduce his prior conviction, that waiver is constitutionally invalid as a matter of federal law *despite the fact* that the state could have adopted such a rule constitutionally had it chosen to do so. *Cf. Caputo v. Henderson,* 541 F.2d 979, 982–84 (2nd Cir. 1976) (holding that a defendant's guilty plea is not knowingly made and is hence constitutionally invalid and subject to reversal on habeas if it is based upon erroneous sentencing information provided by the judge).

Finally, Galindo was *not only* unlawfully induced to waive his fundamental constitutional right to testify in his own defense, but he was *also* thereby coerced into waiving his *only* opportunity to deny that he committed the crime of which he was accused and to explain that the crucial evidence upon which the state relied was exculpatory and not inculpatory. In essence, the state erroneously and improperly induced Galindo to waive his right to present his only effective defense to the crime with which he was charged. Such a proceeding—one in which a defendant is improperly deprived of his federal constitutional right to put on a defense, *see United States v. Contento–Pachon,* 723 F.2d 691,

693 (9th Cir.1984)—may well be "fundamentally unfair". Even if that unfairness results from a violation of *state* law, a conviction obtained by means of such unfair process should be reversed. *See Hines,* 658 F.2d at 672; *see also Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir.1977) (noting that habeas relief should be granted "where the violation of the state's evidentiary rules results in a denial of fundamental fairness"); *Woods v. Estelle,* 547 F.2d 269, 271 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977) (noting that the due process clause is violated when a state law "error was of such magnitude as to deny fundamental fairness to the criminal trial"). The due process clause requires that the process given to a criminal defendant be that process which he is due. If a criminal defendant is unlawfully deprived of a fundamental right to which he is legally entitled—here, the right to testify without being impeached with a fifteen-year-old conviction—*and* if, as here, it is more likely than not that that deprivation affected the jury's verdict, the process that was due was not given and the defendant is entitled to a new trial.

My colleagues conclude that *Luce* bars consideration of Galindo's claim and that he raises only an issue of state law. They are incorrect on both counts: *Luce* is inapplicable and Galindo raises a federal claim both because he did not exercise a "knowing, intelligent, and voluntary" waiver of his federal constitutional right to testify in his own defense and because the state's *unlawful* burden on his exercise of that right violated the United States Constitution.

### III.

The California courts, while conceding that the trial court erred, upheld Galindo's conviction on the ground that the error was "harmless". If they are correct, then even if Galindo was coerced into waiving or failed to waive lawfully his constitutional right to testify in his own defense, he may not be entitled to a reversal of his convic-

tion on habeas.[4] If, however, they are wrong, then Galindo is entitled to a reversal of his conviction on habeas.

The California courts were plainly and unquestionably wrong when they held that Galindo's testimony could not have changed the jury's verdict: not even my colleagues defend that result here. First, Galindo's testimony might have successfully rebutted the most incriminating evidence against him. The jury heard a police officer testify that Galindo told him that he poked the gun into his wife's stomach despite the fact that he knew that it often "misfired". The officer's testimony regarding Galindo's statement was *crucial* to the state's case: the prosecutor referred to the statement repeatedly in his closing argument and at one point stated that he felt that a successful prosecution of Galindo would "require" introduction of that evidence. Galindo's explanation of his statement—that he knew that the gun would sometimes *not* fire but had no indication whatsoever that it would *spontaneously* fire—would have been of *immense* importance in refuting the otherwise-incriminating nature of that statement. If the jury had believed him, it is unlikely that it would have found him guilty of murder.

Second, Galindo's testimony could—indeed, almost undoubtedly *would*—have had a major impact on the jury. There were two witnesses to the shooting: Galindo and his wife. The latter was dead (and the jury was not permitted to learn of the exculpatory comment she made shortly after the shooting) and the former (as far as the jury knew) refused to explain the circumstances of her death. In such a situation, it is entirely reasonable to believe that Galindo's silence instilled in the minds of the jurors the erroneous belief that he had no defense and that he was guilty of the crime with which he was charged. *See Zal v. Steppe*, 968 F.2d at 933 (9th Cir.1992) (Noo-

nan, J., concurring in part and dissenting in part) ("For any human being accused of an offense an explanation of why he or she acted is important.... The first step in making a defense is to explain why the defendant did what he did."). Few things are more damaging to a defendant than his failure to tell the jury that he is innocent; thus, few rights are more important than the right to take the stand in one's own defense. Galindo's presence on the witness stand might well have convinced the jury that while he was criminally responsible for the death of his wife, he should not be convicted of murder. In fact, it would be a most unusual case indeed in which the deprivation of a defendant's right to testify in his own defense could properly be classified as harmless error.

Here, Galindo's explanation would have undoubtedly been vitally important in the jury's determination whether the elements of *murder*, under California law, had been established. In order to convict Galindo of murder, the jury was required to find that he *actually knew* that his action involved "a *high degree of probability* that it will result in death". *People v. Dellinger*, 49 Cal.3d 1212, 1218, 264 Cal.Rptr. 841, 844, 783 P.2d 200, 203 (1989) (emphasis added) (quoting and citing numerous sources). Galindo's statement that he knew that the gun "misfired" was the *sole* evidence relating to his actual knowledge of the likely consequences of his acts—the sole evidence that he knew that there was a "high degree of probability" that his conduct would cause his wife's death. Unexplained, Galindo's statement constituted highly compelling inculpatory evidence. However, if the jury had heard Galindo's explanation of the statement, it is quite conceivable that it would not have found that he "actually knew" that his action involved a "high degree of probability" that it would result in

---

4. Because Galindo was deprived of his constitutional rights at the proceeding, reversal is required if the state cannot establish *beyond a reasonable doubt* that his testimony would not have changed the jury's verdict. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Because the state cannot meet that burden, *see infra* at 1432, I find no

need to determine whether, if it had, the errors at Galindo's trial would have made that proceeding "fundamentally unfair" and hence required reversal *per se*. *See Arizona v. Fulminante*, ─── U.S. ───, ─── ── ──, ─── ── ──, 111 S.Ct. 1246, 1256–57, 1264–65, 113 L.Ed.2d 302 (1991).

his wife's death or that he had the "wanton and malignant heart" required in order to be convicted of murder.[5]

\* \* \* \* \* \*

I disagree with my colleagues that *Luce* prevents us from considering Galindo's claim. More important, I believe that it is clear that the trial court's erroneous decision effectively deprived Galindo of his only defense to the charge of murder in the second degree. That decision deprived Galindo of his constitutional right to testify in his own defense and made his trial fundamentally unfair. Thus, the error resulted in a violation of Galindo's federal constitutional rights. Galindo did not waive his right to testify in a knowing, voluntary, and intelligent manner. His waiver was ineffective as a matter of federal law. Contrary to the view of the California courts, the trial court's error could not be deemed harmless under any standard—and certainly it was not harmless under the constitutional error standard. That the state could have but failed to adopt a *Luce-type rule is plainly irrelevant. Galindo's conviction of murder should not stand.*

Accordingly, I dissent.[6]

---

**5.** Indeed, it may well be that the mere act of sticking a shotgun in an individual's stomach is legally insufficient to provide the foundation for a murder conviction; certainly, that should be the case when the police acknowledge that the defendant *never placed a finger on the trigger.* Given that a shotgun would fire spontaneously only exceedingly rarely in such a situation, it is unlikely that *that action,* as a factual matter, inherently involves a "high degree of probability" of resulting in death. *Compare People v. Watson,* 30 Cal.3d 290, 179 Cal.Rptr. 43, 637 P.2d 279 (1981) (second degree murder charge permissible when individual with .23 percent blood alcohol level drove 84 miles per hour in 35 m.p.h. zone, ran through a red light, barely avoided another accident, and then slammed into another car, killing its occupants). *But cf.*

*id.* at 294, 179 Cal.Rptr. at 45–46, 637 P.2d at 281 (noting that magistrate had found that that evidence was *not* sufficient to establish second degree murder).

**6.** The exclusion of Galindo's wife's statement that the shooting was an accident was also probably error of constitutional magnitude. However, because I would reverse Galindo's conviction on the impeachment issue, I need not decide that question; nor need I decide whether the exclusion of that statement, standing alone, was harmless beyond a reasonable doubt. However, when two errors are combined, there can certainly be no doubt that the errors were not harmless.