John Byron CUFFLE,
Petitioner–Appellant,

v.

Robert GOLDSMITH, et al.,
Respondents–Appellees.

No. 89–15537.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1990.

Decided June 15, 1990.

Rhonda L. Repp, Prescott, Ariz., for petitioner-appellant.

Robert S. Golden, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees.

Before LIVELY *, FLETCHER and REINHARDT, Circuit Judges.

LIVELY, Circuit Judge:

The petitioner, an Arizona state prisoner, appeals from the district court's denial of his application for a writ of habeas corpus. The history of the case covers a period of many years and a brief recitation of the facts is necessary.

### I.

In 1975, Cuffle was charged with first degree murder in connection with a homicide that occurred in 1973. In 1975, Cuffle was also charged with armed kidnapping in a separate case. Pursuant to a plea agreement in which the sentence for murder was stipulated as life imprisonment, Cuffle entered no contest pleas to both charges and was sentenced to consecutive terms of 75 to 100 years in prison for armed kidnapping and life with eligibility for parole in 25 years on the murder charge. On appeal, the Arizona Supreme Court determined that the record did not contain sufficient evidence on the issue of whether Cuffle fully understood, or was advised by counsel before the pleas, of the nature of the charges against him. Thus, the Arizona Supreme Court remanded the case to the trial court for the purpose of conducting an evidentiary hearing. The supreme court did not vacate the convictions or the sentences. It stated that the conviction and pleas "need not necessarily be set aside if the record can be expanded to reflect that the defendant in fact understood the nature of the charges against him." *State v. Cuffle*, Cr. 88683 and 88568, slip op. at 3 (Ariz. July 21, 1976). The court's directions on remand stated:

> The cases are remanded to the superior court for a further hearing to determine if, at the time of the pleas of no contest, the defendant knew, or was advised by counsel before the pleas, of the nature of the offenses to which he was pleading no contest.

If the superior court finds that the defendant knew or was adequately informed of the nature of the offenses, that court will make appropriate findings and advise this Court of such findings. If the superior court finds that the defendant was not aware or was not advised by his counsel of the nature of the charges, that court will set aside the pleas of no contest and proceed to try the matters.

The trial court commenced the mandated hearing on September 30, 1976, but midway in the proceedings Cuffle advised the court that he wished to dismiss his court-appointed attorney and withdraw his appeal. Cuffle now states that he made these requests because during the lunch recess on the first day of his remand hearing, Cuffle's mother and Sergeant Calles, an agent of the state, warned Cuffle that he "could probably or possibly get the death penalty" if he were eventually convicted of first degree murder in the 1973 homicide. In addition, the attorney for the State indicated to the court in the presence of the petitioner that the State might pursue the death penalty if the pleas were vacated. Cuffle's attorney argued that Cuffle could not be sentenced to death for a subsequent conviction on the murder charge. The trial judge refused to rule on the issue, instead instructing Cuffle that he would have to decide for himself what the possibilities were. On October 1, after an overnight recess, the trial court permitted Cuffle to discharge his attorney and withdraw his appeal. When advised of this occurrence, the Arizona Supreme Court affirmed the conviction and original sentences.

Cuffle filed two petitions for post-conviction relief in the state courts in which he argued that he was coerced into withdrawing his appeal during the 1976 hearing. He referred to the threat by Calles that he might receive the death penalty at a new trial if he should succeed on appeal in having his plea to the murder charge set aside. Cuffle also raised the issue of ineffective

---

* The Honorable Pierce Lively, Senior Circuit Judge of the Sixth Circuit, sitting by designa-

tion.

assistance of counsel, and attempted to argue that his original plea to the kidnapping charge was not voluntarily made. State post-conviction relief was denied.

In December 1987, eleven years after he withdrew his appeal, Cuffle filed the present habeas corpus action asserting three constitutional violations. First, he claimed that he lost his appeal because his decision to withdraw it was the product of threats that he could receive the death penalty if he succeeded in overturning his two convictions. Second, he claimed that his no contest plea to armed kidnapping was involuntary because he did not understand the range of penalties to which he was subjecting himself. Third, Cuffle claimed that he was denied effective assistance of counsel because his lawyer on appeal did not argue that his plea to armed kidnapping was involuntary. The case was referred to a magistrate who concluded that the petition should be denied. The district judge adopted the magistrate's recommendation and Cuffle has appealed.

Upon examination of the record, we conclude that Cuffle exhausted his state remedies prior to bringing this habeas corpus action.

## II.

Two of Cuffle's claims—that he did not understand the range of sentences to which he exposed himself by pleading no contest, and that his counsel rendered ineffective assistance—require little discussion.

### A.

■ The record does not support Cuffle's claim that he did not understand the range of sentences in pleading no contest to the armed kidnapping charge. As the Arizona Supreme Court noted, the trial judge meticulously informed Cuffle of his rights and ascertained that the pleas were not the result of coercion or based on promises not contained in the plea agreements. The trial court also informed Cuffle of the range of sentences for armed kidnapping and Cuffle acknowledged that he understood the sentencing possibilities on that charge.

### B.

■ A convicted defendant who claims that his counsel's performance was so ineffective as to mandate reversal of his conviction must satisfy two separate requirements: (1) The defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) he must demonstrate that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The proper standard is one of "reasonably effective assistance," judged by an "objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064. Prejudice is established by showing "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■ Cuffle failed to establish either component of his claim of ineffective assistance of counsel. First, as noted, the record clearly demonstrates that the trial court advised Cuffle of the range of sentences for armed kidnapping and he acknowledged that he understood. Thus, his appellate attorney's assistance was not deficient. An attorney is not required to argue a claim that is clearly refuted by the record. Furthermore, Cuffle was not prejudiced. The Supreme Court of Arizona considered the question, even though not raised, and found that the trial court did advise Cuffle of the range of sentences for the kidnapping charge, and that insofar as this factor was concerned, his plea was voluntarily and intelligently made. The record supports this factual finding. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (§ 2254(d) presumption of correctness applies to factual findings of a state appellate court).

## III.

The remaining issue is more difficult. In connection with his no contest plea to the

murder charge, Cuffle agreed to a stipulated life sentence. Cuffle asserts that before accepting the stipulation and imposing a life sentence the trial judge considered mitigating and aggravating circumstances, as required by Arizona law, and necessarily concluded that the death penalty could not be imposed. Thus, Cuffle contends, the trial judge "acquitted" him of a murder charge for which the death penalty would have been appropriate. When, during the remand hearing Cuffle advised the court that the detective had told him that he might receive a death sentence if he won on appeal and returned to the superior court for a new trial, Cuffle's attorney and the prosecutor disagreed on whether this would be possible. The trial judge refused to state whether he would be subject to a death sentence if he should succeed with his appeal. This is the situation, Cuffle argues, that led him to waive counsel and withdraw his appeal, over the protest of his attorney. He now argues that a death sentence following his appeal would have violated the Double Jeopardy Clause, and that under all of these circumstances, his waiver of appeal was involuntary and should be set aside.

In addition, even if not barred by double jeopardy, Cuffle argues that the death penalty could not have been imposed following a reversal of his conviction or a setting aside of the life sentence. He maintains that such an increase in punishment is prohibited by the Due Process Clause as the Supreme Court held in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Cuffle contends that there would be a presumption of vindictiveness if the trial judge who originally sentenced him to life imprisonment were to change the sentence to death following his successful appeal.

### A.

Prior to accepting Cuffle's no contest plea to the murder charge, the trial court advised him that Arizona law required the court to consider aggravating and mitigating circumstances before imposing a sentence. The court also told Cuffle that a hearing would be held to determine the appropriate sentence and that the stipulation for a life sentence was not binding; that a death sentence was a possibility.

Cuffle presented evidence in mitigation at the capital sentencing hearing. A psychiatrist testified that Cuffle had a long history of sexual deviation including voyeurism and sadistic cruelty centered around hostility to or hatred of women. (The victims of both crimes to which he pled no contest were women). The witness diagnosed Cuffle as having a personality disorder with a diminished capacity to conform his conduct to the requirements of law, but stated that he was not completely out of contact with reality. Cuffle's medical history disclosed that his full scale I.Q. is 86, considered by one psychologist as "dull normal." At the conclusion of the hearing, the court announced that it would return its "Special Verdict" at the time of sentencing.

Several weeks after the capital sentencing hearing described above, the trial judge conducted sentencing proceedings. After imposing sentence on the armed kidnapping charge, the court filed a special verdict setting forth its findings with respect to aggravating and mitigating circumstances in connection with the murder charge. Without mentioning the death penalty, the trial court then sentenced Cuffle to life imprisonment without the possibility of parole for twenty-five years. This was to be consecutive to the sentence for armed kidnapping.

In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Supreme Court held that under a capital sentencing procedure "that resembles a trial on the issue of guilt or innocence," *Id.* at 444, 101 S.Ct. at 1861, one who is sentenced to life imprisonment is protected by the Double Jeopardy Clause from being sentenced to death for the same offense following a successful appeal. The sentence of life imprisonment at the first trial meant that the defendant had already been acquitted " 'of whatever was necessary to impose the death sentence' " and that he could not be given death following a second conviction. *Id.* at 445, 101 S.Ct. at 1861 (quoting dissenting opinion of Chief Justice Bard-

gett in *State ex rel. Westfall v. Mason,* 594 S.W.2d 908, 922 (Mo.1980)).

In *Arizona v. Rumsey,* 467 U.S. 203, 209, 104 S.Ct. 2305, 2309, 81 L.Ed.2d 164 (1984), the Supreme Court determined that Arizona's capital sentencing proceeding "shares the characteristics of the Missouri proceeding [described in *Bullington* ] that make it resemble a trial for purposes of the Double Jeopardy Clause." The sentencer, the trial judge in Arizona, "is required to choose between two options: death, and life imprisonment without possibility of parole for 25 years." *Id.* at 209–10, 104 S.Ct. at 2309. When the judge imposes a life sentence, after following detailed statutory standards related to aggravating and mitigating circumstances, "[t]hat judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty." *Id.* at 211, 104 S.Ct. at 2310.

In its brief, the State did not answer Cuffle's arguments based on *Rumsey,* but at oral argument attempted to distinguish that case. The State contended that the trial judge did not conduct a formal proceeding to determine the appropriate sentence, but merely held a hearing on the voluntariness of Cuffle's plea. The record refutes this claim. The trial court conducted three separate hearings after being notified that Cuffle desired to enter a no contest plea.

The first hearing was a plea-taking proceeding where the court made a determination that there were no legal grounds for not accepting the pleas. At the conclusion of that hearing, the judge stated on the record that he accepted the pleas and that he made a determination of guilt. He advised Cuffle and his counsel that he would hold a capital sentencing hearing on the murder charge on a specific date.

■ The second hearing was the capital sentencing hearing at which Cuffle presented his evidence of mitigating conditions. This was identical to the proceeding

that Justice O'Connor, adopting the *Bullington* analysis, found in *Rumsey* to have the hallmarks of a trial on guilt or innocence. The imposition of the life sentence carried with it a finding that the State had failed to prove its case for the death penalty. 467 U.S. at 209, 104 S.Ct. at 2309. Thus, a sentence imposed after a completed Arizona capital sentencing proceeding triggers the protection of the Double Jeopardy Clause. *Id.* at 209–10, 104 S.Ct. at 2309.

At the third proceeding, the trial judge formally imposed the sentences on both counts, after filing his "Special Verdict" in the murder case.

### B.

■ *Rumsey* is controlling. Once the trial judge sentenced Cuffle to life, there could never be a death sentence on the murder count, regardless of the reason for requiring a new trial or other proceedings following appeal. This being so, the question becomes, did the State deprive Cuffle of a constitutional right by influencing him to discharge his attorney and withdraw his appeal on the basis of a threat that he would be subject to the death penalty if he should succeed on appeal? There are two possible approaches to this question, one involving vindictiveness on the part of the sentencing judge and the other involving a coerced waiver of a constitutional right.

■ In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, the Supreme Court considered two cases in which trial judges imposed more severe sentences on defendants after retrial following successful appeals. The Court held that the original convictions were "wholly nullified and the slate wiped clean" by the appeal courts' actions. *Id.* at 721, 89 S.Ct. at 2078. In new sentence after retrial following a defendant's successful appeal, a trial judge is not absolutely prohibited from increasing the punishment. Due process requires, however, that vindictiveness play no part in the decision to impose a harsher sentence. To avoid a presumption of vindictiveness, a judge who imposes a more severe sentence under these circumstances must state his reasons, which "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentenc-

ing proceeding." *Id.* at 726, 89 S.Ct. at 2081.

The Supreme Court held in *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), that pleas of guilty encouraged by the fear of a possible death sentence are not necessarily invalid. As with other waivers of constitutional rights, guilty pleas must be "voluntary ... knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748, 90 S.Ct. at 1469 (footnote omitted). Even where a defendant might not have pled guilty without the possibility or certainty that the plea will result in a less severe sentence than could have been imposed following trial, such a plea is not per se "compelled and invalid under the Fifth Amendment...." *Id.* at 751, 90 S.Ct. at 1470.

In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), during plea bargaining the prosecutor threatened to reindict the defendant on a more serious charge if the defendant did not plead guilty to the offense originally charged. When the defendant refused the offered bargain, the prosecutor carried out his threat and obtained a new indictment on the more serious charge. Distinguishing *North Carolina v. Pearce*, the Court stated that there is no element of punishment or retaliation in the "give-and-take of plea bargaining." *Id.* 434 U.S. at 363, 98 S.Ct. at 668. The accused is free to accept or reject a plea proposal and, if advised by competent counsel, an accused's guilty plea is not involuntary in a constitutional sense because induced by the fear that a harsher penalty would be a possibility following a trial. *Id.*

The Supreme Court further developed this theme in *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). After discussing *Brady* and *Bordenkircher*, the Court held that a procedure by which homicide defendants who plead *non vult* may be treated more leniently than those who go to trial, while those who choose trial are not given the same possibility of leniency, does not violate due process rights of the latter. The Court found "no element of retaliation" against a nonpleader for going to trial.

"There is no suggestion that he was subjected to unwarranted charges." *Id.* 439 U.S. at 223, 99 S.Ct. at 499. The Court also found no suggestion that the defendant, Corbitt, who chose to go to trial, was not well counselled or that he did not understand the choices presented by the sentencing scheme. *Id.* at 225, 99 S.Ct. at 500.

## IV.

We approach our decision by applying *Rumsey, Brady, Bordenkircher* and *Corbitt*, rather than *Pearce*. The detailed sentencing procedures required of Arizona trial judges in capital cases provide a firm basis for application of the Double Jeopardy Clause, which implicates the voluntariness of Cuffle's waiver of his right to appeal. On the other hand, it is difficult to deal with a presumption of vindictiveness as part of an event that has not occurred. We have only a threat of the possibility of a death sentence, not an actual imposition of the harsher penalty.

Under *Rumsey*, Cuffle could not have been sentenced to death following a second determination of guilt on the murder charge. Thus, his decision to discharge his attorney and withdraw his appeal was induced by a false threat. *Brady, Bordenkircher* and *Corbitt* stress the fact that the defendants who waived constitutional rights in the face of threats of death sentences or increased punishment for failing to do so acted voluntarily, knowingly and intelligently. In each case, the threatened consequences of failure to waive a constitutional right were real. Brady could have been sentenced to death, Hayes (the *Bordenkircher* defendant) was vulnerable to the habitual criminal charge that followed his refusal to accept the offered plea bargain, and Corbitt was subject to the possibility of a longer prison term for failing to waive his right to trial and plead *non vult* to the charges. Thus, none of the three made the decision to waive in the face of a threat that could not have been carried out. Furthermore, all made their decisions with the advice of counsel.

The Supreme Court has stated that "[a]s applied to a criminal trial, denial of due process is the failure to observe that funda-

mental fairness essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). A state denies a defendant due process of law by inducing him to waive constitutional rights by threats of consequences that the state cannot legally bring about. The unwarranted threat in the present case caused Cuffle to waive two constitutional rights. He discharged his attorney and he withdrew an appeal that Arizona law makes available to all criminal defendants. The State's actions failed to observe that "fundamental fairness" that is the essence of due process.

 There was an additional defect in the proceedings. In view of the evidence, known to the trial judge, of Cuffle's mental impairment, a hearing was required to determine whether Cuffle was competent to proceed without the assistance of counsel. The evidence adduced during Cuffle's capital sentencing hearing established that the defendant had difficulty understanding the consequences of his actions. He was described as having a personality disorder and as being unable to conform his actions to the requirements of the law. Under these circumstances, the trial court had a "protecting duty" to conduct an inquiry into the issue of his competence to waive his right to counsel and proceed as his own attorney. *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966). This court has held that "[d]ue process requires that a state court initiate a hearing on the defendant's competence to waive counsel whenever it has or should have a good faith doubt about the defendant's ability to understand the nature and consequences of the waiver, or to participate intelligently in the proceedings and to make a reasoned choice among the alternatives presented." *Harding v. Lewis*, 834 F.2d 853, 856 (9th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988). The court continued, "[a] good faith doubt exists when there is substantial

evidence of incompetence." *Id.* The medical evidence of Cuffle's mental impairments and the opinion that he "was not *completely* out of touch with reality" met this standard. (Emphasis added).

The judgment of the district court is reversed. Cuffle's withdrawal of his appeal is set aside. The case is returned to the trial court for reinstatement of the proceedings directed by the Arizona Supreme Court's remand order. Unless Cuffle waives counsel after a hearing and determination that he is competent to represent himself, the court will appoint counsel and complete the proceedings that were aborted on October 1, 1976, on the basis of an unwarranted threat of a death sentence.

This court is aware of the difficulties that the Arizona court will face in carrying out these directions. Nevertheless, no other remedy is available for the constitutional violations that occurred.

REVERSED and REMANDED.