890 P.2d 602

**STATE of Arizona, Appellee,**

v.

**John Albert HINCHEY, Appellant.**

No. CR–92–0104–AP.

Supreme Court of Arizona,
En Banc.

March 2, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section and Randall M. Howe and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for the State.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato and Paul C. Klapper, Deputy Public Defenders, Phoenix, for John Albert Hinchey.

## OPINION

MARTONE, Justice.

John Albert Hinchey was convicted of premeditated first degree murder and sentenced to death. We affirmed the conviction but vacated the death sentence and remanded for resentencing. *State v. Hinchey,* 165 Ariz. 432, 799 P.2d 352 (1990), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1589, 113 L.Ed.2d 653 (1991). Hinchey was again sentenced to death. This is his automatic appeal. *See* Rules 26.15 and 31.2(b), Ariz.R.Crim.P., and A.R.S. § 13–4031. We affirm.

## I. BACKGROUND

In September, 1985, Hinchey lived with his longtime girlfriend, Marlyn Bechtel, and her two daughters from an earlier marriage. Hinchey and Marlyn often fought about her daughters. On September 29, Marlyn's younger daughter returned home later than expected. Hinchey and Marlyn fought. Although Marlyn tried to walk away from the argument, Hinchey followed her downstairs, pulled out a pistol and shot her four times. Marlyn was able to run out of the house.

Hinchey next went to the bedroom of Tammy Bechtel, Marlyn's older daughter, and kicked in the door. Tammy awoke, and Hinchey shot her twice in the face. Hinchey purposefully avoided harming Tammy's infant son, who was sleeping in the same room.

Hinchey left Tammy's room and found Marlyn on a sidewalk near the house. He tried to shoot her again, but the pistol did not fire. He then beat Marlyn with the pistol and repeatedly beat her head against some nearby rocks. He went back to the house, heard Tammy moaning, grabbed a bottle from the kitchen and used it to beat Tammy in the face. She was still moaning when the bottle broke from the force of the beating, so Hinchey went back to the kitchen for a knife. He then stabbed Tammy many times, and left the knife protruding from her abdomen. Marlyn survived. Tammy died.

Hinchey turned himself in to the police the next morning and confessed. He initially agreed to plead guilty to the first degree murder of Tammy and the attempted murder of Marlyn if the state would not seek the death penalty. To satisfy its part of the agreement, the state agreed not to offer any evidence of aggravating circumstances during the required aggravation/mitigation hearing.[1] The plea agreement included a stipulated life sentence on the murder charge. The plea, therefore, made it impossible for Hinchey to receive the death sentence after the hearing, for if the judge rejected the life sentence, Hinchey had the absolute right to withdraw from the plea. Rule 17.4(e), Ariz. R.Crim.P.

At the beginning of the aggravation/mitigation hearing, Hinchey asked that his appointed counsel be dismissed and that he be allowed to proceed *in propria persona.* He also asked to withdraw his guilty plea. The judge denied each of these requests and heard evidence of mitigation presented by Hinchey's counsel. After the hearing, the court accepted the plea and sentenced Hinchey to life imprisonment on the murder conviction and a consecutive 21–year prison term on the attempted murder conviction.

---

1. The court is required to hold an aggravation/mitigation hearing whenever a defendant is convicted of or pleads guilty to first degree murder. A.R.S. § 13–703(B).

Hinchey then filed a petition for post-conviction relief pursuant to Rule 32, Ariz. R.Crim.P., claiming that his request to withdraw from his plea was improperly denied. Under Rule 17.4(b), Ariz.R.Crim.P., a plea agreement may be revoked by any party before its acceptance by the court. Acknowledging its error, the court vacated his convictions and sentences.

In late 1987, Hinchey was tried for the crimes. Although he argued that he was not guilty by reason of insanity, the jury convicted him of both murder and attempted murder. After a hearing on aggravating and mitigating circumstances, the court found that the murder was especially cruel, heinous and depraved and that a previous endangerment conviction constituted an aggravating circumstance under A.R.S. § 13–703(F)(2). The court also found that the proffered mitigating circumstances were not sufficiently substantial to call for leniency. Hinchey was therefore sentenced to death on the murder conviction, and 21 years on the attempted murder conviction.

On appeal, we upheld Hinchey's convictions and his sentence for attempted murder. The court concluded, however, that Tammy's murder was not "especially cruel" and that Hinchey's previous conviction was not an aggravating circumstance as defined by A.R.S. § 13–703(F)(2). We remanded for resentencing on the murder conviction. *Hinchey*, 165 Ariz. at 433, 799 P.2d at 353.

The judge who presided over the resentencing found that the factors offered in mitigation were not sufficiently substantial to call for leniency in light of the heinousness and depravity of the crime. Hinchey again was sentenced to death.

## II. ISSUES

We address the following issues:

1. Does Hinchey's death sentence violate the constitutional prohibition against double jeopardy?

2. Did the court violate Hinchey's right to speak on his own behalf at sentencing?

3. Did the court err because it found that mitigating circumstances did not "outweigh" aggravating circumstances?

4. Did the court err in its evaluation of Hinchey's proffered mitigating circumstances?

5. Does death by lethal injection violate the Eighth Amendment?

We will not discuss the following issues because they are foreclosed by previous decisions of this court and the United States Supreme Court:

1. Arizona's death penalty statute violates the Eighth Amendment because it does not sufficiently channel the sentencer's discretion. See *State v. Landrigan*, 176 Ariz. 1, 6, 859 P.2d 111, 116 (sentencer's discretion sufficiently channeled because statute narrowly defines class of death-eligible defendants), *cert. denied,* — U.S. —, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993).

2. Arizona's capital sentencing procedure violates Hinchey's right to equal protection because a judge instead of a jury determines the propriety of the death penalty. See *Walton v. Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511 (1990) (Sixth Amendment does not require jury to make findings of aggravating and mitigating circumstances).

3. Death by lethal gas is cruel and unusual punishment. See *State v. Greenway*, 170 Ariz. 155, 160, 823 P.2d 22, 27 (1991) (death by lethal gas not cruel and unusual).

4. The court should conduct a proportionality review. See *State v. Salazar*, 173 Ariz. 399, 416–17, 844 P.2d 566, 583–84 (1992) (proportionality review not constitutionally required; court will no longer conduct them), *cert. denied,* — U.S. —, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).

## III. DISCUSSION

A. *Double Jeopardy*

Hinchey claims that the court's imposition of the death sentence violated the prohibition against double jeopardy guaranteed by the United States and Arizona Constitutions.[2]

2. Although Hinchey mentions the Arizona Con-

stitution, he restricts the substance of his argu-

Specifically, he claims he was "acquitted" of the death penalty when he received a life sentence pursuant to the original plea agreement, and therefore could not later be sentenced to death. The state argues that jeopardy did not attach to the first sentencing because, pursuant to the plea agreement, Hinchey was not at risk of receiving the death penalty.

■ Hinchey relies on *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), and *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), to support his assertion that his death sentence violates the prohibition against double jeopardy because he had been "acquitted" of the death penalty. In *Bullington*, the Court held that a defendant who is sentenced to life imprisonment under a capital sentencing procedure that "resembles a trial on the issue of guilt or innocence" is protected by the Double Jeopardy Clause from being sentenced to death for the same offense following a successful appeal. *Bullington*, 451 U.S. at 444, 101 S.Ct. at 1861. *Rumsey* held that Arizona's capital sentencing procedure is similar to a trial for double jeopardy purposes. *Rumsey*, 467 U.S. at 209, 104 S.Ct. at 2309. When a judge in Arizona imposes a life sentence after an aggravation/mitigation hearing, "[t]hat judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty." *Id.* at 211, 104 S.Ct. at 2310.

■ But *Rumsey* clearly contemplates a hearing in which "[t]he sentencer—the trial judge, in Arizona—is required to choose between two options: death, and life imprisonment without possibility of parole for 25 years." [3] *Id.* at 209–10, 104 S.Ct. at 2309. There are two reasons why *Rumsey* is inapplicable. First, the judge's discretion here

was limited to rejecting or accepting Hinchey's plea. The plea agreement provides:

> "The defendant agrees to plead guilty to: COUNT I: Murder in the first degree.... The defendant shall be sentenced to Life plus twenty-one (21) years. No Death penalty on Count i [sic]....

If the judge rejected the plea agreement or its sentencing provisions, he would have had to allow Hinchey to withdraw his plea. Rule 17.4(e), Ariz.R.Crim.P. Hinchey was never at risk of receiving the death penalty. Thus, unlike in *Rumsey*, jeopardy did not attach.

■ Second, the hearing here was not of the kind contemplated by *Bullington* and *Rumsey*. The choice discussed in *Rumsey* (the judge's sentencing choice between life imprisonment and death) is "guided by detailed statutory standards defining aggravating and mitigating circumstances...." *Rumsey*, 467 U.S. at 210, 104 S.Ct. at 2309. The state must prove beyond a reasonable doubt that at least one aggravating circumstance exists before the sentencing judge can possibly impose a death sentence. A.R.S. § 13–703(E); *State v. Runningeagle*, 176 Ariz. 59, 64, 859 P.2d 169, 174, *cert. denied*, —— U.S. ——, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993). The state may offer such proof at an aggravation/mitigation hearing, or may rely upon the evidence presented at a trial. A.R.S. § 13–703(C).

Hinchey's first sentencing did not follow a trial, and the state offered no evidence at the aggravation/mitigation hearing. This is the state's prerogative. *State v. Murphy*, 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976) (prosecutor has discretion whether to offer aggravating evidence and seek death penalty). Thus the court could not have found the existence of an aggravating circumstance when the state presented no evidence and was only seeking a life sentence. *Id.* ("Without such evidence there was no proof

ments to the federal issue. He has given no indication that the Arizona Constitution gives him greater double jeopardy protection than the United States Constitution, and we will not analyze them separately. *See Taylor v. Sherrill,* 169 Ariz. 335, 338, 819 P.2d 921, 924 (1991) (defendant's double jeopardy arguments based on federal constitution; court will not separately consider state constitution); *Pool v. Superior Court,*

139 Ariz. 98, 108, 677 P.2d 261, 271 (1984) (we ordinarily interpret article 2, § 10 of Arizona Constitution in conformity with United States Constitution).

**3.** Trial judges may now impose a term of life imprisonment without the possibility of parole. A.R.S. § 13–703(A) (1993).

of any aggravating circumstances, and the sentence of death was not proper."); *State v. Brewer*, 170 Ariz. 486, 500, 826 P.2d 783, 797 (judge decides propriety of death sentence only where prosecution has "placed [it] in issue during sentencing"), *cert. denied*, —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992). The judge did not, using the words in *Rumsey*, "choose between two options: death, and life imprisonment without possibility of parole for 25 years." *Rumsey*, 467 U.S. at 209–210, 104 S.Ct. at 2309. There was no determination by the judge or an appellate court "that the prosecution [had] not proved its case." *Bullington*, 451 U.S. at 443, 101 S.Ct. at 1860. This was not a case where the sentence was "based on findings sufficient to establish legal entitlement to the life sentence" or was "undoubtedly an acquittal on the merits." *Rumsey*, 467 U.S. at 211, 104 S.Ct. at 2310. There were no merits. There was no evidence. Sentencing Hinchey to death was never a possibility. Any suggestions to the contrary at Hinchey's hearings were incorrect.

*Rumsey* envisioned a "sentencing hearing involv[ing] the submission of evidence and the presentation of argument," *id.* at 210, 104 S.Ct. at 2309, not a mere formality that could only end in a life sentence or the rejection of Hinchey's plea. Unlike *Rumsey*, the prosecution here never tried and failed to prove its case for the death penalty. The notion of the state failing to prove its case is central to both *Rumsey* and *Bullington*. *Poland v. Arizona*, 476 U.S. 147, 152–54, 106 S.Ct. 1749, 1753–54, 90 L.Ed.2d 123 (1986). Rumsey had a real possibility of being sentenced to death. Hinchey's chance of being sentenced to death was zero. He was never in any jeopardy. Hinchey's reliance on *Rumsey* is misplaced. .

This case is similar to the recent Mississippi case of *Lanier v. State*, 635 So.2d 813 (Miss.1994). In *Lanier*, defendant was convicted of murder and sentenced to death. That sentence was reversed. On remand, the state agreed to seek only a life sentence, with defendant agreeing to never seek parole. Defendant was sentenced to life, but the sentencing agreement was nullified on appeal. The question for the Mississippi Supreme Court was whether the defendant could be sentenced to death on his resentencing. The court held that he could. It said:

> On remand the State did not fail to prove its case for the death penalty—it refrained from putting on its case in exchange for Lanier's agreement to be sentenced to life without parole. It follows that the judge's imposition of a life sentence was not an acquittal of the death penalty for Lanier: no adjudication on the merits was necessary or possible in light of the agreement between Lanier and the State.... The judge could not have decided that the State failed to prove its case for the death penalty because the State did not present its case for the death penalty and the judge made no determination on the merits.

*Id.* at 817–18.

We agree with the Mississippi court. There has never been a determination that the state has not proved its case for the death penalty. It never put on its case because of its obligations under the plea agreement. The aggravation/mitigation hearing did not "resemble a trial on the merits," and did not require the sentencing judge to choose between life and death. Double jeopardy did not attach and therefore could not prevent a subsequent death sentence after a trial.

■ We are aware of the opinion of the United States Court of Appeals for the Ninth Circuit in *Cuffle v. Goldsmith*, 906 F.2d 385 (9th Cir.1990). Cuffle pled no contest to murder, with a stipulated life sentence. The sentencing judge informed Cuffle that an aggravation/mitigation hearing would be held to determine the appropriate sentence. He also told Cuffle that a death sentence was a possibility.[4] On appeal, this court remanded

---

4. We are at a loss to explain why the judge so advised Cuffle. Rule 17.4(e), Ariz.R.Crim.P., requires that the defendant be allowed to withdraw from a plea when the court rejects a provision of the plea agreement. That rule was in effect in 1975. The case did arise one year before our *Murphy* decision, which held that a judge cannot find an aggravating circumstance for the purposes of the death penalty when there is no trial and the prosecutor chooses not to offer support-

to the trial court for a determination of whether Cuffle had been advised of the nature of the charges against him. Cuffle withdrew his appeal. He later claimed that he did so because he was told that he could be sentenced to death if he went to trial. The Ninth Circuit had to decide whether he could have been sentenced to death.

That court held that Cuffle's aggravation/mitigation hearing was of the kind discussed in *Rumsey* and that jeopardy had attached. We believe that the court misunderstood our sentencing scheme. If there is no trial and no evidence of aggravation, then the trial judge can only sentence the defendant to life imprisonment. Unless sentenced pursuant to the plea, the defendant has the right to withdraw. If there is a plea agreement with a stipulated life sentence, the defendant cannot be sentenced to death. The Ninth Circuit has since acknowledged this in *Clark v. Lewis*, 1 F.3d 814, 823 (9th Cir. 1993).

Because jeopardy did not attach, Hinchey's double jeopardy argument fails.[5]

### B. *Right to Speak on Own Behalf*

Hinchey next argues that the sentencing judge erred when he failed to give Hinchey the opportunity to make a statement before sentencing. He argues that he was denied an opportunity to speak on his own behalf (the right to "allocution") as required by Rule 26.10(b)(1), Ariz.R.Crim.P.

 Although it is true that the sentencing judge failed to ask whether Hinchey wanted to be heard, the error does not require resentencing. The purpose of allocution "is to allow the defendant to make a mitigating statement for the judge to consider in determining the sentence." *State v. McCall*, 160 Ariz. 119, 124, 770 P.2d 1165, 1170 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990). Therefore, even if a court forgets to invite the

defendant to speak, there is no need for resentencing unless the defendant can show that he would have added something to the mitigating evidence already presented. *See State v. Starr*, 110 Ariz. 580, 582, 521 P.2d 1126, 1128 (1974). Hinchey failed to remind the judge below. He did not ask to speak. He let the sentencing go on. He fails to argue what he would have offered in mitigation that had not already been presented during the three day aggravation/mitigation hearing. Thus, we conclude that the error here is technical, without any substantive consequence.

### C. *Must Mitigating Circumstances "Outweigh" Aggravating Circumstances?*

 Hinchey argues that the sentencing judge erroneously weighed the mitigating circumstances because he found that they did not "outweigh the heinous and depraved nature of the murder to warrant leniency." Special Verdict at 8. Hinchey notes that the mitigating circumstances need only be "sufficiently substantial" to call for leniency and need not outweigh aggravating circumstances. *See* A.R.S. § 13–703(E). Hinchey challenges the judge's use of the word "outweigh."

Consideration of aggravating and mitigating circumstances necessarily requires a balancing or weighing. We have consistently stated in our opinions that mitigation must "outweigh" the aggravating circumstances in order to be sufficiently substantial to call for leniency. *See, e.g., Richmond v. Lewis*, —— U.S. ——, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992) (Arizona a "'weighing' state, where aggravating and mitigating factors are balanced against each other"); *Brewer*, 170 Ariz. at 504, 826 P.2d at 801 (task on review to "determine whether any mitigating circumstances outweigh any aggravating circumstances"; we held no mitigating factors sufficiently substantial to call for leniency); *State v. Richmond*, 136 Ariz.

---

ing evidence at sentencing. *Murphy*, 113 Ariz. at 418, 555 P.2d at 1112.

**5.** The state also claims that Hinchey waived his double jeopardy rights because his plea agreement provided for the reinstatement of charges on withdrawal of his plea or reversal of his

conviction. This issue is a difficult one, but was only very briefly discussed by the state. Given the summary nature of the arguments, the complexity of the issue, and the fact that we find Hinchey's double jeopardy rights were not violated, we do not decide the issue.

312, 321, 666 P.2d 57, 66 (agreeing that "the mitigation offered by appellant is not sufficiently substantial to outweigh the aggravating circumstances"), *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). We find no error in the sentencing judge's weighing of the circumstances.

### D. *Mitigation*

■ Hinchey challenges the sentencing court's findings on a number of mitigating circumstances. Hinchey must prove the existence of mitigating factors by a preponderance of the evidence. The weight to be given to those factors is within the discretion of the trial judge. *State v. Atwood,* 171 Ariz. 576, 648, 832 P.2d 593, 665 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

#### 1. Personality Disorder

■ Hinchey argues that the sentencing judge improperly considered evidence of his personality disorder. The judge concluded that the facts of the case "belie that Mr. Hinchey could not know or appreciate his violent acts...." Special Verdict at 8. From this, Hinchey asserts that the trial judge incorrectly required him to prove that he did not know the violent nature of his acts.

Hinchey takes the language from the special verdict out of context. Hinchey offered evidence of his personality disorder to show that he might have been in a dissociative state during the murder. But he bought a weapon the day before the murder. The judge properly noted that this fact alone refuted the theory that Hinchey's actions resulted from a dissociative state. Thus, the language in the special verdict is a factual determination, not the judge's understanding of the standard for mitigation. Because Hinchey offered the evidence of a personality disorder to prove the alleged dissociative state, it has no other mitigating value. The sentencing judge considered the evidence properly.

#### 2. Stress

Hinchey next argues that the sentencing judge limited his consideration of Hinchey's stress as a statutory mitigating circumstance under A.R.S. § 13–703(G)(2) and failed to consider it as non-statutory mitigation. We disagree.

■ A remand for resentencing may be necessary if mitigating evidence that does not rise to the level of a statutory mitigator is not also considered under the category of non-statutory mitigation. *State v. Gallegos,* 178 Ariz. 1, 22, 870 P.2d 1097, 1118, *cert. denied,* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994). However, it is clear from the special verdict that the sentencing judge found Hinchey's stress to have no mitigating value whatsoever. The judge stated, "[s]uch stress ... does not warrant the defendant using a false name and identification to buy a gun with the intent to kill Tammy and then fulfilling that intent after first shooting Marlyn Bechtel four times." Special Verdict at 5. Even if Hinchey's stress had some weight as a non-statutory mitigating circumstance, we find on independent review that resentencing is unwarranted. *See State v. Bible,* 175 Ariz. 549, 609, 858 P.2d 1152, 1212 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).

#### 3. Jury Foreman's Affidavit

■ Hinchey contends that the sentencing judge erred when he did not consider in mitigation an affidavit written by the jury foreman stating that Hinchey did not deserve the death penalty. We find no error here. The affidavit in question was solicited by Hinchey's counsel. It reflects the opinion of a person who did not attend the hearing on aggravating and mitigating circumstances. The sentencing judge could reasonably have found that the affidavit was not mitigating.

#### 4. Hinchey's Adjustment to Incarceration

■ Hinchey argues that his adjustment to incarceration should have been considered a mitigating circumstance. We find that the sentencing judge properly concluded otherwise. Although the fact that a capital defendant is a model prisoner has previously been considered a mitigating circumstance, *see State v. Watson,* 129 Ariz. 60, 63–64, 628 P.2d 943, 946–47 (1981), a sentencing judge is not

required to accept it as mitigating. Here, the sentencing judge considered the evidence and found that it was not mitigating. We agree.

### 5. Hinchey's Earlier Life Sentence

█ Finally, Hinchey argues that his original life sentence is a mitigating circumstance. Because the sentence resulted from a plea agreement and not from a weighing of all of the relevant facts of the case, the sentence is not mitigating. Hinchey's argument has no merit.

### E. Eighth Amendment Issues

█ Hinchey argues that death by lethal injection violates the Eighth Amendment to the United States Constitution because if carried out incorrectly, the procedure could be painful, and if carried out correctly, "he will be aware of the onset of loss of consciousness and will suffer shortness of breath and suffocation not unlike death by lethal gas." Appellant's Opening Brief at 39. We have found no legal authority to support this argument. The state cites authority holding that lethal injection is not cruel and unusual punishment, State v. Moen, 309 Or. 45, 786 P.2d 111, 143 (1990), and argues that medical experts urge that death by lethal injection is the most humane of any method of execution. See People v. Stewart, 121 Ill.2d 93, 117 Ill.Dec. 187, 197, 520 N.E.2d 348, 358, cert. denied, 488 U.S. 900, 109 S.Ct. 246, 102 L.Ed.2d 234 (1988). The state has the better argument. We hold that death by lethal injection is not cruel and unusual punishment. In all events, Hinchey has the option of choosing death by lethal gas, which is constitutionally permissible. See Greenway, 170 Ariz. at 160, 823 P.2d at 27.

### IV. CONCLUSION

We have reviewed the record for fundamental error as required by A.R.S. § 13–

4035, and we find none. We therefore affirm Hinchey's death sentence.

MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.

FELDMAN, Chief Justice, specially concurring.

I concur in the majority's conclusion that Hinchey's death sentence must be affirmed. Although I cannot agree with the court's reasoning on the double jeopardy issue, I ultimately agree that the present record fails to show that jeopardy attached to Hinchey's life sentence. In my view, however, the question is closer than the court's analysis admits.

The record here hints that, as in Cuffle v. Goldsmith, 906 F.2d 385 (9th Cir.1990), the parties believed or agreed that Hinchey's first trial judge could impose the death penalty even if he accepted Hinchey's plea.[1] And if that is true, the judge could have "acquitted" Hinchey of the death penalty in finding that no aggravating circumstances existed and in imposing a life sentence.[2]

The record on these questions, however, is not as clear as in Cuffle. Thus, any other resolution will have to be left to post-conviction proceedings in which the record can be more fully developed and it can be determined whether there was an understanding, tacit or explicit, that the trial judge retained the prerogative to impose death after accepting the plea.

---

**1.** The propriety of this under Ariz.R.Crim.P. 17.4(e) would affect only the validity of such a belief or agreement, not its existence. Moreover, as the court notes, Hinchey's first trial judge was not always constrained by the Rules of Criminal Procedure.

**2.** I disagree that there "were no merits" and that there "was no evidence." There was ample evidence in the presentence report. The trial judge in fact considered it in finding aggravating factors for Hinchey's non-capital convictions. He similarly could have used it, and may well have, in finding no capital aggravating circumstances. See A.R.S. § 13–703(C).