**Harvey Zane JENKINS, Petitioner–Appellant,**

v.

**Ernie ROE, Warden, California State Prison, Respondent–Appellee.**

No. 00–15264.

D.C. No. CV–97–01208–GEB.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 15, 2001.*

Decided Aug. 27, 2001.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R.App. P. 34(a)(2).

**628**

Before WOOD, JR.,** KOZINSKI, and O'SCANNLAIN, Circuit Judges.

### MEMORANDUM ***

Harvey Zane Jenkins, a California state prisoner, appeals the federal district court's dismissal of his petition for writ of habeas corpus filed under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). We have jurisdiction pursuant to 28 U.S.C. § 2253. We review *de novo* a district court's dismissal of a habeas petition. *See McNab v. Kok,* 170 F.3d 1246, 1247 (9th Cir.1999). However, "[t]o the

extent it is necessary to review findings of fact, the clearly erroneous standard applies." *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991).

Jenkins was convicted by a jury of second degree murder and use of a rifle in the commission of the offense. Jenkins' conviction was affirmed by the state appellate court and the California Supreme Court denied review. Jenkins filed successive habeas petitions in state courts, which were denied, as were his motion for writ of habeas corpus in, and a request for a certificate of appealability ("COA") from, the federal district court. This court issued a COA on one issue: whether his Sixth Amendment right to effective assistance of counsel was violated by his trial attorney's failure to impeach witnesses Helen Arias and Dan Sowles with prior inconsistent statements and his failure to call Joseph Arias and Cynthia Moss as witnesses. We do not address Jenkins' other arguments because we may not consider any issue not specified in the COA. *See* 28 U.S.C. § 2253(c); *Hiivala v. Wood,* 195 F.3d 1098, 1103 (9th Cir.1999).

A claim of ineffective assistance of counsel in federal habeas petitions filed on or after AEDPA took effect on April 24, 1996 is generally analyzed under the first prong of "unreasonable application" of 28 U.S.C. § 2254(d). *Weighall v. Middle,* 215 F.3d 1058, 1062 (9th Cir.2000). For a state court's application of federal law to be found unreasonable, it must be clearly erroneous. *Id.*

The parties agree that *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the relevant "clearly established federal law." In order to make a claim for ineffective assistance

---

** Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

of counsel, defendant must establish that counsel's performance was deficient and that this "deficient performance" caused prejudice to the defendant. *Id.* at 687–88. In review of a habeas petition, a defendant claiming ineffective assistance of counsel must show that his trial counsel's deficient performance falls outside a wide range of reasonableness and that he was prejudiced by that performance. *See Weighall,* 215 F.3d at 1062. Because we agree with the state courts' determinations that the performance of Jenkins' trial counsel was not unreasonable, we need not address the prejudice prong.

Five eyewitnesses for the prosecution testified at Jenkins' trial, all of whose testimony supported the following version of the shooting: After some type of verbal confrontation with Jenkins, the victim left Jenkins' home and was walking across the lawn to his car, presumably to leave, Jenkins then emerged from the front door of the home with a rifle which was pointed towards the victim, the victim turned around to face Jenkins, and Jenkins shot him from a distance varying between eight to twenty feet. Although Jenkins now portrays the shooting as an accident, he testified that "I don't honestly know if I meant to pull that trigger or if it just happened that way." After reading the trial transcripts, the state court judge denied Jenkins' state court habeas petition, noting:

> All of the witnesses other than petitioner testified that he emerged from the duplex with a rifle after [the victim and his girlfriend] began walking away to their car. Indeed, [Jenkins] conceded these facts during his own testimony. Evidence adduced at trial therefore sup-

ported a finding that petitioner reignited the confrontation by emerging with his rifle. He is therefore precluded from relying upon any alleged subsequent belligerence on [the victim's] part to justify the shooting.[1] Any impeachment or evidence tending to establish that [the victim] thereafter confronted [Jenkins] is immaterial.

Helen Susan Arias, along with Joseph Arias and Cynthia Moss, witnessed the events of the killing from her home located across the street from Jenkins' residence. An investigator for the public defender's office interviewed Helen Susan Arias, Joseph Arias, and Cynthia Moss, noted that the three "substantially" concurred in their statements and presented an "Investigation Report," a single account in the form of a "compilation" statement. The report stated that after Jenkins came out with a rifle, the victim became belligerent, and "walked right up to [Jenkins]," at which time Jenkins fired. Helen Susan Arias was the only one of the three to testify at trial. Jenkins claims that she could not remember the details as to the distance between Jenkins and the victim at the time of the shooting, but the record indicates she testified that the men were eight to ten feet apart at that time.

■ Apart from the report's validity and its questionable admissibility to impeach only one party with a "compilation" statement, the purpose of the impeachment is also questionable. Jenkins may have wanted the jury to infer that he fired in fear of his own well-being, as discussed above by the state court in denying Jenkins' state habeas petition, but any contra-

---

**1.** *See* California Jury Instructions–Crim., Nos. 5.52, Self–Defense–When Danger Ceases, "The right of self-defense exists only as long as the real or apparent threatened danger continues to exist. When the danger ceases to appear to exist, the right to use force in self-defense ends," and 5.55, Plea of Self–Defense May Not Be Contrived, "The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense."

dictory evidence tending to establish that the victim provoked or threatened Jenkins after Jenkins emerged with the rifle was immaterial. In addition, the statement also confirmed prosecution testimony that the shooting occurred in Jenkins' front yard. Introducing this document would have impeached Jenkins' own testimony that the shooting occurred inside his home. Mere criticism of a counsel's trial tactic or strategy is not in itself sufficient to support a charge of inadequate representation. *See Gustave v. United States,* 627 F.2d 901, 904 (9th Cir.1980). Impeachment evidence is considered a matter of trial tactics. *See id.* at 905. Counsel's decision not to introduce the document to impeach was a reasonable decision of trial strategy.

Jenkins also argues that his counsel failed to impeach Sowles' testimony as to the distance between the victim and Jenkins at the time of the shooting. Jenkins claims that Sowles, who testified at trial that the deceased had been shot by Jenkins from approximately fifteen to twenty feet, should have been impeached with a police report, in which Sowles stated that Jenkins shot the victim from approximately five to six feet. Sowles testimony at trial and his statement to the police were the same in every manner except for the distance between the victim and Jenkins at the time of the shooting.

In addition, Jenkins claims that Sowles' testimony should have been impeached with the testimony of Jenkins' sister. Jenkins maintains that his sister overheard and tape recorded a telephone conversation between Jenkins and Sowles in which Sowles stated that he had seen the victim lunge at Jenkins, causing Jenkins to step backwards and trip over a lamp, thereby accidently discharging the rifle. However,

Jenkins offers no evidence that he discussed using the tape recording at trial or requested that his sister be called as a witness to testify that she had given the tape to the public defender. He has not presented a copy of the alleged tape recording nor has he presented evidence that the tape was ever received by the public defender. The only "evidence" in the record about this tape recording and its contents is a copy of his sister's "Declaration," not a sworn statement, dated April 2, 1996, three years after Jenkins' trial.[2] In this declaration, Jenkins' sister states that she gave the public defender the original tape recording "prior to trial." Jenkins has offered no evidence that his counsel was made aware of the tape or explanation why he did not use it at trial if he was aware of it.

■ The performance of defense counsel is not rendered ineffective by making a tactical decision to not impeach witnesses' discrepancies that would have emphasized claims rebutted by the evidence. *See Cuffle v. Goldsmith,* 906 F.2d 385, 388 (9th Cir.1990) (holding that counsel is not required to argue a claim that is refuted by the record). Jenkins' trial counsel made several such tactical decisions not to impeach witnesses' testimony that would emphasize a claim refuted by the record, not to use questionable evidence to impeach, and not to impeach with evidence that would then impeach Jenkins' own statements.

Jenkins tried to assert self defense, and now alleges that the shooting was an accident. The jury heard his testimony at trial but chose to believe it was neither. Issues of credibility are for the jury to determine, *see United States v. Loya,* 807 F.2d 1483, 1489 (9th Cir.1987) (holding that contradictory and inconsistent testi-

---

**2.** Curiously, Jenkins states in his brief, "Trial counsel should have been aware of [his sister]'s statement to the Deputy Public Defend-

er," yet, as the dates indicate, this statement did not exist at the time of trial.

mony is sufficient to support a conviction where the jury "resolved the conflicts of evidence in favor of the prosecution's factual theory"), and where "there is conflicting evidence sufficient to support .either outcome, [the appellate court] must affirm the decision actually made." *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971).

We find that the state court's application of *Strickland* concerning Jenkins' ineffective assistance of counsel claim was not clearly erroneous. The district court correctly determined that the state courts properly applied federal precedent in a reasoned and reasonable way. The district court's order denying Jenkins' habeas petition is AFFIRMED.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.