**Ronald Lee DEERE, Petitioner–Appellant,**

v.

**Jeanne S. WOODFORD, Warden, for the California State Prison at San Quentin, Respondent–Appellee.**

**No. 01–99019.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 22, 2003.

Filed Aug. 13, 2003.

As Amended on Denial of Rehearing Oct. 2, 2003.

Michael Satris, Bolinas, CA, and Diana Samuelson, San Francisco, CA, for the petitioner-appellant.

Frederick R. Millar, Jr., San Diego, CA, for the respondent-appellee.

Before SILVERMAN, W. FLETCHER, and RAWLINSON, Circuit Judges.

## ORDER

### I. Background

In 1982, Petitioner Ronald Deere was convicted in California state court of one count of first-degree murder with special circumstances and two counts of second-degree murder. He was sentenced to death. His convictions and death sentence followed his plea of guilty to three counts of murder and his repeatedly stated, adamant desire to be punished by execution. Upon being notified that Deere desired to plead guilty and be sentenced to death, the prosecutor suggested to the court, "as a precaution," that Deere undergo a mental examination by a physician, Dr. Bolger, whom the prosecutor mistakenly represented to be a board-certified psychiatrist. Dr. Bolger practiced psychiatry, but was not board-certified in that specialty or any other.

Dr. Bolger reported that Deere understood the implications of his situation and was competent to plead guilty. Dr. Bolger found no evidence of psychosis or abnormal thinking. He reported that Deere was well aware of the charges facing him, understood the waiver of the right to a jury trial, and could adequately assist counsel. Glenn Jones (Deere's lawyer) and the prosecutor stipulated to Dr. Bolger's report, after which the trial judge found Deere to be competent, accepted Deere's plea, and ultimately sentenced Deere to death.

At around the same time as Dr. Bolger examined Deere, Mr. Jones also arranged for Deere to be examined by William Jones, Ph.D., a psychologist. It appears that Lawyer Jones specifically directed Dr. Jones to stay away from the question of Deere's competency; he was told to only conduct psychological testing, and to focus on Deere's background, intellectual ability, and "identification issues." Dr. Jones reported to Mr. Jones, *inter alia*, that Deere was oriented as to time, place and person, was aware of the charges against him, that he wished to be found guilty and accept punishment, and that he evidenced no obvious thought disorders.

In 1993, in connection with the present federal habeas petition, Dr. Jones furnished a declaration that says, in effect, that he did not express an opinion on Deere's competency in 1982 because he was asked not to; if he had been asked, he would have reported that Deere's competency to plead guilty was "very questionable." In his declaration, Dr. Jones also stated:

> Mr. Deere was competent in the limited sense of knowing what was going on around him, so that he understood the nature of the criminal proceedings; however, Mr. Deere's mental disorders rendered him unable to assist counsel in the conduct of a defense in a rational manner. Mr. Deere's initial refusal to cooperate with my evaluation of him and his eventual failure to complete the testing were themselves indicators of his inability to rationally cooperate in the presentation of a defense. Mr. Deere simply was not able to make logical judgments about his defense, rather, he had a compulsion to be punished with the death penalty and did not want anyone to interfere with that. Mr. Deere's insistence on pleading guilty was part of that compulsion and an outgrowth of his mental disturbances, it was irrational. It did not appear to me that Mr. Deere was capable of making a knowing, voluntary, intelligent decision to so plead.
>
> * * *
>
> In sum, it appeared to me that Mr. Deere was so bent on self-destruction that it disabled him from cooperating in a meaningful way with the presentation of a defense and caused him to solicit the death penalty.

Deere also submitted to the district court the 1993 declaration of Fred Rosenthal, Ph.D., M.D., a board-certified psychiatrist. Dr. Rosenthal was retained several years after Deere pleaded guilty. Dr. Rosenthal reviewed documents supplied to him and personally examined Deere in 1992. Dr. Rosenthal opined, *inter alia*, that Deere suffers from the effects of organic brain damage which affects him cognitively, neurologically and behaviorally. Dr. Rosenthal said that there was substantial evidence that Deere's thought processes were illogical and disturbed during his post-arrest incarceration. Dr. Rosenthal stated:

> In my professional opinion, which I hold to a reasonable degree of medical certainty, Mr. Deere's multiple impairments, exacerbated by pressures from his former girlfriend and the conditions of his confinement [at the time of his arrest], rendered him incompetent to rationally comprehend his trial proceedings or to aid and assist counsel. I concur in the conclusion of Williams Jones, Ph.D., who examined Mr. Deere at the time of his plea, and would have advised he was not competent to stand trial.

II. Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) does not apply to the determination of the merits of this case because Deere filed his petition prior to April 24, 1996, the effective date of AEDPA. *Woodford v. Garceau*, — U.S. —, 123 S.Ct. 1398, 1402, 155 L.Ed.2d 363 (2003); *Williams v. Woodford*, 306 F.3d 665, 684 (9th Cir.2002); *Baja v. Ducharme*, 187 F.3d 1075, 1077–78 (9th Cir. 1999); *compare* 28 U.S.C. § 2254(d) (1996) *with* 28 U.S.C. § 2254(e)(1) & (2) (2002).

■ "In a habeas proceeding, a petitioner is entitled to an evidentiary hearing on the issue of competency to stand trial if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir.1985) (citation omitted). A "good faith" or "substantial doubt" exists "when there is substantial evidence of incompetence." *Cuffle v. Goldsmith*, 906 F.2d 385, 392 (9th Cir.1990). "Even if the evidence before the trial judge was insufficient to raise a good faith doubt with respect to [a defendant's] competency, he would still be entitled to [a hearing] if it now appears that he was in fact incompetent." *Steinsvik v. Vinzant*, 640 F.2d 949, 954 (9th Cir.1981) (citation omitted).

The district court weighed Drs. Jones and Rosenthal's declarations against the other evidence of record and concluded that "there is not a bona fide doubt as to [Deere's] competency to stand trial. Accordingly, no evidentiary hearing is necessary...."

■ The district court's conclusion about Deere's competency may or may not ultimately prove correct, but we agree with Deere that he came forward with sufficient evidence at least to trigger a hearing on whether he was, in fact, competent to have pleaded guilty. We do not quarrel with the district court's statement that Dr. Rosenthal's "conclusions cannot be awarded as much weight as that given to Dr. Jones' examination which occurred around the time of the trial." Belated opinions of mental health experts are of dubious probative value and therefore, disfavored. *See Williams*, 306 F.3d at 706. ("[W]e disfavor retrospective determinations of incompetence, and give considerable weight to the lack of contemporaneous evidence of a petitioner's incompetence to stand trial.") (citation omitted).

Dr. Jones's declaration, however, stands on different footing. It is based on his two examinations of Deere, which he per-

formed in 1982, within several days of when Deere pleaded guilty. It is, therefore, probative of Deere's mental status at the critical time. Dr. Jones also offered a reasonable explanation for why he did not render an opinion on Deere's competency right then and there: He was told by Lawyer Jones not to. Viewed together, the declarations of Drs. Jones and Rosenthal "create a real and substantial doubt" as to Deere's competency to plead guilty, if they are taken at face value and assumed to be true.

We express no opinion on how the district court should weigh the evidence after hearing it. We simply hold that a hearing was required. We remand to the district court with directions to hold a hearing on Deere's claim that he was incompetent to plead guilty, and to reconsider the petition for writ of habeas corpus as to the claims premised on that contention. This court will rule on the other issues raised in petitioner's appeal if and when the case is re-appealed. This panel will retain jurisdiction over any future appeal.

REMANDED.